**MILLER BREWING COMPANY,**
Appellant (Cross–Claim
Defendant),

v.

**BARTHOLEMEW COUNTY BEVERAGE
COMPANY, INC.,** (Cross-claim Plaintiff
below) and State of Indiana ex rel.
Indiana Alcoholic Beverage Commission
(Plaintiff below), Appellees.

No. 49A02–9505–CV–247.

Court of Appeals of Indiana.

Dec. 6, 1996.

Transfer Denied May 9, 1997.

Ronald D. Gifford, Baker & Daniels, Indianapolis, for Appellant.

Alan S. Brown, Julia Blackwell Gelinas, Sandra Boyd Williams,Locke Reynolds Boyd & Weisell, Indianapolis, for Appellees.

## OPINION

SULLIVAN, Judge.

Miller Brewing Company ("Miller"), defendant below, appeals the trial court's grant of summary judgment in favor of Bartholemew County Beverage Company, Inc. ("BCB"), an authorized distributor of Miller products. BCB alleged that certain price promotions implemented by Miller for its Indiana distributors constituted unlawful efforts to restrict BCB's sales of Miller products to BCB's designated area of primary responsibility, unlawful control of BCB's business, and embodied illegal price discrimination. Finding no genuine issue of material fact regarding the implementation and operation of Miller's price promotions, and concluding

that BCB was entitled to judgment as a matter of law, the trial court entered summary judgment against Miller. The issue for our review is whether BCB's motion for summary judgment was properly granted.

We affirm.

Miller is a Wisconsin corporation which produces various brands of beer. Miller's products are distributed in Indiana through a three-tier distribution system under which Miller sells its products to distributors who in turn sell those products to retail establishments. Consumers purchase Miller products at these retail locations. Miller's Indiana distributors are authorized to distribute Miller products in the state pursuant to distributor agreements between Miller and the distributors. Under these agreements, distributors are assigned areas of "primary responsibility" within which it is the distributor's primary responsibility "to promote and sell Miller products to retail locations." Record at 18.

BCB is an Indiana corporation engaged in the business of selling beer to retail outlets throughout the state. BCB is authorized to distribute certain Miller products throughout Indiana pursuant to a distributor agreement entered into between BCB and Miller on May 1, 1983. BCB's area of primary responsibility includes Bartholemew, Jackson, and Jennings counties. Other distributors of Miller products have similar arrangements and have been assigned other counties in Indiana as their respective areas of primary responsibility.

Miller has historically offered a variety of price promotions to its distributors in Indiana. When initiating a price promotion, Miller circulates promotional information describing the details of the promotion and setting forth the dates during which a particular promotion is to remain in effect. These promotional programs (hereinafter collectively referred to as "price promotions") include Miller's "price promotion reimbursement program" ("price promotion program") and its "volume account allowance program" ("VAA program"). Under the price pro-

motion program, Miller reimburses distributors a predetermined fixed amount for each case of beer sold to retailers. Under the VAA program, Miller establishes certain volume account allowances pursuant to which Miller reimburses distributors at a predetermined fixed amount for higher volume sales of Miller products to retailers.

On December 7, 1992, Miller issued a memorandum to its Indiana distributors outlining changes in both the price promotion and VAA programs effective January 4, 1993. The memorandum noted that under the price promotion program, a distributor would be "reimbursed a predetermined, fixed allowance amount for every case sold to retailers during the promotion period." Record at 36. According to the memorandum, the allowance amount for case sales within a distributor's area of primary responsibility ("APR") was "subject to change by Miller based upon changing market conditions." *Id.* However, the allowance amount for case sales to retailers outside of a distributor's APR was fixed at $.10 per case. Miller's memorandum provided the following example of the mechanics of the amended price promotion program:

"If Miller quad brand loose cans are on price promotion at the predetermined, fixed allowance amount of $.30/case from February 1, through February 15, 1993, and you sold 10,000 cases to retail accounts within your assigned area of primary responsibility and 5,000 cases to retail accounts outside of your assigned area of primary responsibility, you would be entitled to the following reimbursement:

| | |
|---|---|
| 10,000 cases sold within assigned area of primary responsibility @$0.30 per case | $3,000 |
| 5,000 cases sold outside assigned area of primary responsibility @$0.10 per case | $ 500 |
| Total reimbursement due you from Miller | $3,500" |

Record at 36–37. While the amount of the allowance varied by brand or by package, it appears from the record that under Miller's 1993 changes a distributor was always reimbursed $.20 more per case for cases sold within its APR than for cases sold outside its APR.[1]

Miller's memorandum outlining its promotional policy for 1993 also amended the terms of its VAA program. The VAA pro-

---

1. If sales to retailers involved loose cans or six-packs, the per case reimbursement might differ in amount, but the price differential between sales within the APR and outside the APR was the same. However, the memorandum disclosed that the differential was subject to change.

gram provided a separate schedule of reimbursement amounts for larger quantity sales to retailers. To qualify for reimbursement under the VAA program, a distributor had to sell to a retailer a minimum of from twenty-five to 100 kegs or a minimum of from 100 to 200 cases of beer. (R–391) According to Miller's memorandum, sales qualifying for the VAA reimbursement made within a distributor's APR would be entitled to the entire reimbursement amount. However, qualifying sales made outside a distributor's APR would entitle the distributor to only one-third of the intra-APR reimbursement amount.

Miller explained in its memorandum that the changes to its reimbursement policy were implemented "[i]n an effort to encourage [distributors] to concentrate [their] sales efforts on Miller brands in retail locations within [their] assigned area of primary responsibility and thereby increase [their] marketing focus, retail execution, brand penetration and improve your sales performance on Miller brands...." Record at 36. Prior to these changes in Miller's price promotion policy, Miller distributors were reimbursed the same amounts under the price promotion and VAA programs regardless of whether sales were made inside or outside of their areas of primary responsibility. While Miller's memorandum stated that its policy changes were effective January 4, 1993, the memorandum did not indicate a date upon which its price promotions would terminate. Nor did the promotions contain any internal limitation on the extent of the inter- and intra-APR reimbursement differentials.

Following Miller's announcement of the changes to its promotional policy, BCB and others complained to the Indiana Alcoholic Beverage Commission ("IABC") that Miller's policy violated state alcoholic beverage regulations and laws. The IABC subsequently voted to submit the question to then-Indiana Attorney General Linley Pearson for an opinion as to the legality of Miller's price pro-

motions. On January 8, 1993, the Attorney General issued an opinion stating that whether Miller's programs violated Indiana law was "a question of fact within the discretion of the Indiana Alcoholic Beverage Commission" and returned the issue to the IABC for decision. Op. Atty. Gen. 93–1 (Jan. 8, 1993). The IABC, apparently finding itself constrained by what it saw as the Attorney General's failure to "state definitively what the Alcoholic Beverage Commission's ruling should be on this question," Record at 170, asked the Indiana Attorney General to file a declaratory judgment action pursuant to I.C. 7.1–2–8–3 (Burns Code Ed.1996) to resolve the question.[2]

The State of Indiana, on the relation of the IABC, commenced this litigation by filing a declaratory judgment action against Miller and BCB[3] on August 20, 1993, to determine whether the amendments to Miller's price promotion policy violated I.C. 7.1–5–9–2 (Burns Code Ed.1996), I.C. 7.1–5–5–7 (Burns Code Ed.1996), and 905 I.A.C. 1–28–1 (1992) ("Rule 28"). BCB subsequently filed a cross-claim against Miller requesting a declaration that these programs violated I.C. 7.1–5–9–2, I.C. 7.1–5–5–7, I.C. 7.1–5–5–10 (Burns Code Ed.1996) and 905 I.A.C. 1–28–1, as well as requesting damages arising from the alleged violation. Miller answered, denying BCB's material allegations.

On August 31, 1994, BCB moved for summary judgment on its declaratory judgment claim. Pursuant to Ind. Trial Rule 56(C), Miller filed a brief in response to BCB's motion, designating evidentiary matter which, according to Miller, established the existence of genuine issues of material fact precluding the entry of summary judgment. The trial court found that "[n]o genuine issue of material fact exists regarding the implementation and operation of Miller's price promotion and volume discount allowance reimbursement programs," and found "as a

---

**2.** 7.1–2–8–3 states that the IABC "shall have the authority also to initiate ... an action to obtain a declaratory judgment as to the meaning, application, or constitutionality of a provision of this title or of a rule or regulation of the commission or an order of the commission." The statute necessarily gives the IABC "the authority to go to

the courts to resolve statutory construction issues regarding alcoholic beverage laws."

**3.** The Attorney General also named Miller distributor Beermart, Inc. as a defendant in its declaratory judgment action. Beermart is no longer an active party in this case.

matter of law" that these programs violate 905 I.A.C. 1–28–1, I.C. 7.1–5–5–7, I.C. 7.1–5–9–2 and I.C. 7.1–5–5–9. Record at 415–16. Under Trial Rule 54(B) the court found no just reason for delay and entered judgment for BCB. Miller subsequently petitioned this court for a Stay of Execution and Enforcement of Judgment. Miller's petition was denied July 13, 1995, and the price promotions which are the subject of this litigation have been suspended since that date.

When reviewing a decision upon a motion for summary judgment, this court applies the same standard as the trial court: summary judgment shall be granted if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Wickey v. Sparks* (1994) Ind. App., 642 N.E.2d 262, *trans. denied.* In order to prevail upon appeal when a summary judgment motion has been granted in favor of an opposing party, the appealing party must establish the existence of a genuine issue of material fact from materials designated to the trial court. *Thompson v. Murat Shrine Club, Inc.* (1994) Ind.App., 639 N.E.2d 1039, *trans. denied.* A genuine issue of material fact exists where facts concerning an issue which would dispose of litigation are in dispute. *Kerr v. Carlos* (1991) Ind.App., 582 N.E.2d 860, *overruled on other grounds, Kennedy v. Murphy* (1995) Ind., 659 N.E.2d 506. In other words, for summary judgment purposes, a fact is "material" if it facilitates resolution of any issue. *Board of Comm'rs of Steuben County v. Angulo* (1995) Ind.App., 655 N.E.2d 512. When material facts, or inferences to be drawn therefrom, are not in dispute, the issue in a summary judgment proceeding is the application of law to the facts. *Gallatin Group v. Central Life Assurance Co.* (1995) Ind., 650 N.E.2d 70.

The issues presented for our review are whether the trial court properly entered summary judgment declaring that Miller's price promotion and volume account allowance reimbursement programs violate 905 I.A.C. 1–28–1, I.C. 7.1–5–5–7, I.C. 7.1–5–9–2, and I.C. 7.1–5–5–9. Under the standard of review enunciated above, summary judgment

was improperly granted if any genuine issue of material fact exists. As noted above, our inquiry into the existence of any genuine issue of material fact entails a determination as to whether the undisputed facts in the case dispose of the issues arising under these provisions. If so, then no genuine issue of material facts exists to preclude summary judgment. However, if facts necessary to the resolution of the issues are in dispute, the existence of a genuine issue of material fact would preclude summary judgment. If no genuine issue of material fact exists we must determine whether BCB is entitled to judgment as a matter of law.

The trial court concluded that the undisputed facts demonstrated that BCB was entitled to judgment as a matter of law upon the question whether Miller's amendments to its price promotion policy outlined in its December 1992 memorandum violate 905 I.A.C. 1–28–1, commonly known as "Rule 28". Rule 28, an administrative regulation promulgated by the IABC, provides in pertinent part:

"It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, vintner, or other producer, importer or as a wholesaler of liquor, wine, beer or malt beverages, directly or indirectly, or through an affiliate to:

. . .

(3) Product Distribution—Restrict by agreement or otherwise, the sale or resale of liquor, wine, beer or malt beverages to a given geographical area or to permittees, who are otherwise entitled to buy, within a given geographical area. This section shall not be deemed to prohibit the designation of an 'area of primary responsibility', however, efforts to restrict sales to only the designated area of primary responsibility are deemed to be prohibited."

Our Supreme Court affirmed the constitutionality of Rule 28 and the IABC's authority in promulgating the rule in *Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n* (1992) Ind., 595 N.E.2d 250, noting that the rule prohibits "exclusive territorial limits on the right of wholesalers to sell alcoholic beverages throughout the State of Indiana." *Id.* at 254. However, the trial court from which this appeal was taken is the only court which

has had the opportunity to apply Rule 28 to the facts of a particular case.

Miller contends that the existence of genuine issues of material fact precluded the entry of summary judgment in favor of BCB. Under the standard of review set forth above, summary judgment was properly entered against Miller if the uncontested facts dispose of the issues and demonstrate that BCB was entitled to judgment as a matter of law. It is uncontested that under Miller's price promotion and volume account allowance programs, distributors are to be reimbursed more for sales of Miller products made within their APRs than for sales outside their APRs. It is also not disputed that Miller's program contains no internal limitation on the potential scope of the inter- and intra-APR reimbursement differential. Finally, Miller readily admits that the changes to its price promotions were implemented "[i]n an effort to encourage [distributors] to concentrate [their] sales efforts on Miller brands in retail locations within [their] assigned area of primary responsibility." Record at 36.

Rule 28, as noted, forbids a brewer from "directly or indirectly .... [r]estrict[ing] ... the sale ... of liquor, wine, beer or malt beverages to a given geographical area." 905 I.A.C. 1-28-1. Miller claims, and BCB does not seriously dispute, that Miller's price promotions do not actually create impermissible territorial restrictions. Miller points out that despite the price differential, BCB has continued to sell Miller products both within and without its APR. Miller claims that this fact demonstrates that its programs do not violate Rule 28. BCB, however, notes that while Rule 28 allows the designation of APRs, it forbids "efforts to restrict sales to only the designated area of primary responsibility" and claims that Miller's price programs in and of themselves constitute "efforts to restrict" in violation of Rule 28. The thrust of BCB's argument is that "the very existence of the [reimbursement] differential, not just its size, ... constitutes an illegal effort to restrict distributors to their APRs." Appellee's Brief at 23. Miller argues that, far from being unlawful "efforts to restrict", its price promotions are simply permissible means by which it encourages distributors to

service their APRs. Miller states that its programs were simply "intended to allow a distributor to 'undertake additional promotional, service and merchandising activities in their APRs.'" Appellant's Brief at 31 (quoting Record at 307–08).

Rule 28 specifically permits the use of APRs, stating "[t]his section shall not be deemed to prohibit the designation of an 'area of primary responsibility'...." The Rule, however, also prohibits "efforts to restrict sales to only the designated area of primary responsibility". Miller appears to argue that since Rule 28 allows the designation of APRs, a brewer like Miller may implement programs like the price promotions in question, ostensibly intended to improve a distributor's APR services, so long as those programs do not constitute "efforts to restrict" by having an excessively anticompetitive effect.

Miller's understanding of "efforts to restrict" as those devices which have an unacceptable impact on competition is reflected in Miller's designated issues of material fact. Specifically, Miller argues that the Rule 28 question cannot be answered without reference to facts regarding a number of related issues including the extent to which Miller's price promotions "seek to reduce competition or have the practical effect of doing so", (Appellant's Brief at 28) whether the "price promotion programs deter distributors from selling outside their APRs", *Id.*; "[w]hether Miller intended to limit a distributor's sales to its APR by enacting the price promotion programs", *Id.* at 30; whether these programs "control which customers a distributor sells beer to, or otherwise control the management of the distributor's operation", *Id.* at 32; whether it is "more costly to sell beer outside a distributor's APR", *Id.*; whether the price promotion has had an impact on retail prices and service, *Id.* at 32–33, and whether the programs "require a distributor to offer discriminatory pricing to be competitive", *Id.* at 33. In large part, Miller contends that the trial court should not have answered the Rule 28 question without inquiring into the extent to which its price promotion programs actually restricted the

distribution of Miller products to a distributor's APR.

The tension contained within Rule 28 is evident. The rule permits the designation of APRs but forbids efforts to restrict sales to these APRs. Therefore, to determine whether Miller's price promotions are acceptable under Rule 28, we must determine where the line between permissible APR encouragement and impermissible efforts to restrict lies. Miller's position is that such a determination cannot be made without reference to the competitive effects of its price promotions. Miller rests this contention upon several bases, each of which will be discussed in turn.

First, Miller points to the IABC's handling of a promotional campaign proposed by the G. Heileman Brewing Company in 1983 which, like Miller's program, effectively offered Heileman's distributors a lower price for Heileman beer sold within a distributor's APR than for beer sold outside a distributor's APR. Specifically, it appears that Heileman proposed to grant its distributors a twelve-percent discount on the price of any beer sold within a distributor's APR, effectively charging distributors twelve percent more for beer sold outside their APRs. The IABC held a meeting on November 1, 1983 at which it decided that Heileman's promotional program did not violate Rule 28. The IABC's decision, contained in both the minutes of the commission's meeting and in an order resulting therefrom, stated that "the granting of certain discounts or allowances by brewers to wholesalers as reimbursement for sales within their area of primary responsibility may be a legitimate exercise of the brewer's right to encourage wholesalers to concentrate their sales efforts within their respective areas of responsibility", but cautioned that "the excessive use of such discounts or allowances is contrary to both the letter and spirit of Rule 28." Record at 338. While finding that Heileman's proposal was acceptable under Rule 28, the IABC opined that "[t]he granting of discounts or allowances in excess of twelve percentum (12%) of the unit price to the wholesaler will be viewed as an effort to restrict sales only to the wholesaler's area of primary responsibility" in violation of Rule 28. Record at 338.

Miller argues that the IABC's decision in the Heileman matter stands for the propositions that, first, the acceptability under Rule 28 of price promotions like Miller's is a question of fact, and second, that inter- and intra-APR reimbursement differentials of twelve percent or less are presumptively valid. Miller urges us to accord the Heileman decision the weight traditionally given to an administrative agency's interpretation of a statute which the agency has a duty to enforce. When an appeal involves an agency's determination of a question of law, the Court of Appeals is not bound by an agency's interpretation of the law, but rather determines whether the agency correctly interpreted and applied the law. *Franklin Co. Comm. Sch. Corp. v. Brashear* (1996) Ind.App., 660 N.E.2d 1081. It is true that an agency's interpretation of the statutes and regulations which the agency is charged to enforce is entitled to some weight. *Peabody Coal Co. v. Indiana Dep't of Natural Resources* (1994) Ind.App., 629 N.E.2d 925, *aff'd*, (1995) Ind., 664 N.E.2d 1171. Of course, if an agency's interpretation is erroneous, it is entitled to no weight. *Id.* Ultimately, however, courts are charged with the responsibility of resolving questions of statutory interpretation and thus are not bound by an agency's interpretation of a statute or rule. *Sullivan v. Day* (1996) Ind.App., 661 N.E.2d 848.

This court is not disposed to follow the IABC's reasoning or result in the Heileman matter for a variety of reasons. First, the opinion expressed in the Heileman matter is not entitled to the deference traditionally given to an agency's interpretation of its own statute. After the IABC determined that the Heileman proposal was acceptable under Rule 28, several distributors appealed the IABC's order to the Marion County Superior Court on November 15, 1983, alleging, among other things, that Heileman's program constituted unlawful price discrimination and created illegal exclusive sales territories by restricting sales of Heileman beer to distributors' APRs. (Supp.R.14–17) Heileman subsequently abandoned the challenged pricing structure, and on November

19, 1984 asked the IABC to rescind its November 1983 order. (Supp.R.21) On December 5, 1984, the IABC unanimously voted to rescind its order regarding Heileman's price proposal. (Supp.R.20) The petition for appeal of the IABC's order was consequently dismissed with prejudice by agreement of all of the parties. (Supp.R.22)

BCB argues that the court should read the IABC's decision to rescind its order as a complete abrogation of that order. Miller, however, notes the general rule that in the absence of express statutory authority an administrative agency may not rescind its final decisions, *Adkins v. Tell City* (1993) Ind.App., 625 N.E.2d 1298, and argues that the Heileman order could not have been rescinded as a matter of law, and thus should be accorded the weight Miller claims it is due. Of course, when an administrative agency recognizes its own error of law, it may correct that error. *Id.* Miller points to the absence of record evidence supporting a contention that the IABC rescinded its order to correct an error of law and cautions the court against making such an assumption.

However, the IABC's declaration that it had rescinded the Heileman order, coupled with its refusal to apply the same standard, or indeed any standard, in the present case, demonstrates to this court that the IABC, Indiana's presumptive expert in the field of alcoholic beverage regulations, no longer regards its Heileman interpretation as precedential. With regard to the IABC's ability to seek assistance in interpreting its statutes and rules, presumably, the IABC would not ask the court to rule upon the meaning of an alcoholic beverage statute, rule or order unless the meaning was uncertain and a permittee's rights were in question. Indeed, such a resort to judicial process would prove fruitless if the language was clear on its face.

The same principle applies here. We can safely presume that if the IABC deemed either the rationale or the result in the Heileman affair to constitute valid administrative precedent, the agency would not have asked the courts to resolve the current matter. However, at no time since rescinding its order in the Heileman case has the IABC indicated that the agency considered that order authoritative in any respect as the IABC's interpretation of Rule 28. Rather, it appears the IABC has gone to great pains to express no opinion as to the proper interpretation of Rule 28.[4] This court will not defer to what may have briefly constituted the IABC's view of the meaning of Rule 28 on the grounds that such an opinion is entitled to considerable weight when it is clear that the agency has forsaken any confidence in that interpretation and has refused to take any position as to the meaning of the rule.

Moreover, even if the IABC had continually maintained the validity of the interpretation contained in its Heileman decision, we would not defer or give weight to that interpretation. It is this court's view that the IABC's decision in the Heileman matter was erroneous. As noted, while the rule prohibits the establishment of exclusive geographical territories, it sanctions the establishment of APRs with the qualification that a brewer's efforts to restrict a distributor to its APR are unacceptable. In Heileman, the IABC found that granting a distributor a discount of greater than twelve percent for beer sold within the distributor's APR would be deemed an illegal "effort to restrict sales only to the wholesaler's area of primary responsibility", but that a differential of less than twelve percent "constitutes a legitimate effort on the part of the brewer to encourage its wholesalers to concentrate their sales efforts to their respective area of primary re-

---

4. As noted above, when the IABC was initially asked to assess the legality of Miller's proposed program, it asked the Attorney General to decide the issue. When the Attorney General indicated that the IABC had the authority to answer the question, the IABC asked the courts to settle the controversy. As the IABC stated through the Attorney General in its initial Complaint for Declaratory Judgment in this case, "the ABC requires a judicial determination as to the meaning and application of these provisions of Indiana law" to the facts of Miller's proposals. Record at 15. Further, in its response to BCB's motion for summary judgment, the IABC expressly stated that it "takes no position as to the proper interpretation or application of the statutes and regulation which are the subject of this declaratory judgment action." Record at 220. Finally, since the IABC took no position in the trial court, it has not taken a position upon the merits of this appeal.

sponsibility." Record at 338. While the IABC may have considerable expertise in the alcoholic beverage field, "[c]ourts, not administrative agencies, are the entities with the expertise to resolve questions of statutory construction." *Prosser v. J.M. Corp.* (1994) Ind.App., 629 N.E.2d 904, 907. Rule 28, as we shall see, does not support the drawing of such a line. Rule 28 prohibits "efforts to restrict", not merely those efforts to restrict which cross a certain randomly selected threshold.

■ The IABC's decision in the *Heileman* matter is also flawed as an invalid attempt to promulgate an administrative rule under the guise of an administrative order. An administrative rule is defined in the code as "the whole or any part of an agency statement of general applicability that ... [h]as or is designed to have the effect of law; and ... [i]mplements, interprets, or prescribes ... [l]aw or policy". I.C. 4–22–2–3 (Burns Code Ed.1996). The code defines an "order" as "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." I.C. 4–21.5–1–9 (Burns Code Ed.1996). It is axiomatic that the administrative rulemaking function, which results in administrative rules, is distinguished from the adjudicatory function of an agency, which results in administrative orders. The former involves an element of generality and operates prospectively upon a class of individuals while the latter operates retrospectively upon a particular individual or circumstance. *Indiana Dep't of Envtl. Management v. AMAX, Inc.* (1988) Ind.App., 529 N.E.2d 1209.

While the IABC labeled its decision in the Heileman case an "order", the decision exhibited all of the significant characteristics of a "rule". The IABC's decision interprets Rule 28 to prescribe a twelve percent limit on inter- and intra-APR price discount differentials, and is a statement of general and pro-spective applicability since, as Miller's claim of applicability to this case demonstrates, it potentially operates on all individuals coming within the ambit of Rule 28. As an administrative rule in all but name, its validity depended upon conformance with required rulemaking procedures.[5] The IABC's attempt in Heileman to impose by interpretation a general and prospective rule flies in the face of the requirement that administrative rules be promulgated in conformance with the statutory rulemaking procedures set forth at I.C. 4–22–2–3 (Burns Code Ed.1996). As our Supreme Court has explained,

> "... rights created or benefits conferred by an administrative rule should not be extended by interpretation beyond the plain terms of the rule itself.... To do so would be to create rules by interpretation, thus defeating the legislative requirement that rules may be adopted only by compliance with required formalities such as publication of notice and a hearing and the approval of the attorney general and governor".

*State of Indiana ex rel. Blair v. Gettinger* (1952) 230 Ind. 588, 105 N.E.2d 161, 168 (citations omitted).

Miller also points to the opinion rendered by the Attorney General at the request of the IABC regarding the legality of Miller's promotional programs under Rule 28 for the proposition that the Rule 28 question could not be answered by reference to the undisputed facts alone. The Attorney General stated that "[t]he ultimate question with regard to Rule 28 is whether the price promotion program is an effort to restrict sales to only the designated area of primary responsibility." 1993 Op.Ind.Att'y Gen. No. 1, p. 2. According to the Attorney General, this question could not be answered without reference to whether the programs in issue constituted illegal price discrimination in violation of I.C. 7.1–5–5–7 [6] or were an attempt by Miller to control its distributors in viola-

---

**5.** I.C. 4–22–2–44 states "[a] rulemaking action that does not conform with this chapter is invalid, and a rule that is the subject of a noncomplying rulemaking action does not have the effect of law until it is adopted in conformity with this chapter."

**6.** I.C. 7.1–5–5–7 makes it unlawful for "a permittee in a sale or contract to sell alcoholic beverages to discriminate between purchasers by granting a price, discount, allowance, or service charge which is not available to all purchasers at the same time."

tion of I.C. 7.1–5–9–2 [7]. The Attorney General then noted that "control" within the meaning of the statute was not limited to financial control but contemplated interference with the operation and managerial decision-making process of the distributor's business. 1993 Op.Ind.Att'y Gen. 1, p. 2, (citing *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977) 172 Ind.App. 81, 359 N.E.2d 566). Whether Miller's price promotion interferes with the operation and managerial decisions of its distributors was, in the eyes of the Attorney General, a factual question. *Id.* at 2–3. Thus, according to the Attorney General, "[m]any factors *must* be considered when deciding a Rule 28 issue including the interrelationship of control and price discrimination." *Id.* at 3 (emphasis supplied).

■ We note at the outset the basic tenet of Indiana law that official opinions of the Attorney General, although helpful on occasion, are not binding upon the courts. *Halley v. Bd. of Sch. Trustees* (1988) Ind.App., 531 N.E.2d 1182. That general rule notwithstanding, we believe that the Attorney General's opinion is faulty in two important respects. First, it appears to be based, at least in part, on this court's opinion in *Barco Beverage Corp., supra*, 563 N.E.2d 658, which was ultimately vacated by our Supreme Court, (1992) Ind., 595 N.E.2d 250, as well as upon the erroneous Heileman opinion. Second, we disagree with the Attorney General that the legality under Rule 28 of price promotions like Miller's cannot be determined without reference to "the interrelationship of control and price discrimination." While control and price discrimination are doubtlessly significant indicators of a brewer's efforts to restrict a distributor to its APR, they are surely not the only "efforts" a brewer may employ to so restrict a distributor. Rule 28's prohibition on "efforts to restrict" simply does not mandate an inquiry into control or price discrimination. It mandates an inquiry into "efforts to restrict", which may be comprised of a wide variety of devices.

■ To the extent that the Attorney General's opinion stands for the proposition that the question whether Miller's price promotion programs violate Rule 28 cannot be answered without reference to facts, we are not in disagreement. We simply disagree that "efforts to restrict" under Rule 28 must necessarily include a combination of unlawful "control" and "price discrimination." The question here under the standard of review articulated above is whether the uncontroverted facts regarding Miller's price promotion establish a violation of Rule 28 as a matter of law.

■ Miller also directs us to federal antitrust doctrine in its attempt to demonstrate that genuine issues of material fact exist with regard to the Rule 28 question. Miller argues that Rule 28 should be interpreted in this case to require an inquiry into the competitive effects of its price promotions. It supports this position by analogizing the treatment of territorial restraints under federal antitrust law to the situation at hand. Miller states, quoting the Seventh Circuit Court of Appeals in a case upholding Rule 28 against a challenge under the U.S. Constitution, that " '[t]his is not an antitrust case, but it has its roots in antitrust.' " Appellant's Br. at 21 (quoting *United Beverage Co. v. Indiana Alcoholic Beverage Comm'n* (1985) 7th Cir., 760 F.2d 155, 156). Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination …, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1 (1994). For most of this century the prevailing standard of analysis under the Sherman Act has been the "rule of reason" announced in *Standard Oil Co. v. United States* (1911) 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619. As we shall see, the validity of territorial limitations imposed by manufacturers upon distributors under the Sherman Act depends in large part upon the extent to which the restrictions present an unreasonable impediment to competition.

It may be helpful here to compare the treatment of territorial restrictions under federal antitrust law with their treatment

---

7. I.C. 7.1–5–9–2 provides that "it is unlawful for the holder of a brewer's permit or for a brewer located outside Indiana … to … control … an establishment, company, or corporation holding … a beer wholesaler's permit…."

under Indiana's alcoholic beverage laws. As our Supreme Court has noted, since the repeal of Prohibition in 1933, Indiana statutes have "at various times either prescribed or proscribed territorial limitations on wholesalers of alcoholic beverages." *Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n* (1992) Ind., 595 N.E.2d 250, 253. For example, under Indiana's original alcoholic beverage law, enacted in 1933, statutory quotas established the number of permitted beer wholesalers, and sales by wholesalers were limited to their own and surrounding counties. *Id.* (citing 1933 Ind.Acts, Ch. 80, §§ 6, 8(a)). In 1939, the quota system and legislatively imposed territorial restrictions were abandoned. *Id.* (citing 1939 Ind.Acts Ch. 29, § 2). However, over time franchise relationships between brewers and distributors developed, under which distributors were typically given the exclusive right to sell the brewer's products within a particular geographic area. *Id.*

These exclusive territorial restrictions were rendered invalid in 1967 when the United States Supreme Court held in *United States v. Arnold, Schwinn & Co.* (1967) 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249, that restrictions imposed by a manufacturer on the geographic territories of its dealers and distributors were per se illegal under the Sherman Antitrust Act. The state of the law in this regard did not long remain static. In 1976 the Supreme Court overruled *Schwinn* and held in *Continental T.V., Inc. v. GTE Sylvania, Inc.* (1977) 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568, that territorial restrictions imposed by manufacturers on dealers and distributors were no longer per se violative of the federal antitrust laws. Rather, according to the Court, the legality of territorial restraints under the Sherman Act should be determined under the "rule of reason" traditionally employed in antitrust cases. The Supreme Court explained that under this rule, the trial court "weighs all of the circumstances of a case in deciding whether a

restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Id.* at 49, 97 S.Ct. at 2557. The Court also cautioned that per se rules of illegality, such as the one imposed in *Schwinn* but overruled in *Sylvania,* were only appropriate for certain practices "which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Id.* at 50, 97 S.Ct. at 2557. After the Supreme Court's *Sylvania* decision, it appeared that territorial limitations imposed by brewers on distributors in Indiana would be valid under the Sherman Act so long as they were "reasonable" as defined by the federal courts. However, Indiana soon parted ways with the Supreme Court's view of the validity of territorial restrictions, at least in the context of alcoholic beverage distribution, when the IABC in 1979 promulgated Rule 28 which flatly prohibited the imposition of territorial restrictions by manufacturers of alcoholic beverages on their distributors.

Since the *Sylvania* decision, the Sherman Act's "rule of reason" as applied to territorial restrictions has come to require a balancing of the effects of the restriction on inter- and intra-brand competition.[8] *See, e.g., State of New York by Abrams v. Anheuser–Busch, Inc.* (1993) E.D.N.Y., 811 F.Supp. 848. Referring to federal antitrust precedent, Miller reads Rule 28 to require a similar examination into the extent to which its price promotions impact competition within the beer industry. As Miller states in its brief, "the Court cannot decide whether the price promotion programs violate Rule 28 without reviewing the facts relevant to that decision", including "[d]etermining the competitive effect of [the] program, and whether it creates a de facto vertical restraint." Appellant's Brief at 26. Miller implicitly asks the court

---

8. The U.S. Supreme Court has noted that "[t]he market impact of [geographic] restrictions is complex because of their potential for a simultaneous reduction of intrabrand competition and stimulation of interbrand competition." *Continental T.V., Inc. v. GTE Sylvania, Inc.* (1977) 433 U.S. 36, 51–52, 97 S.Ct. 2549, 2558, 53 L.Ed.2d

568. "Intrabrand competition is the competition between the distributors—wholesale or retail—of the product of a particular manufacturer." *Id.* at n. 19. Interbrand competition, on the other hand, "is the competition among the manufacturers of the same generic product . . . and is the primary concern of antitrust law." *Id.*

to import a version of the federal antitrust "rule of reason" into the court's Rule 28 analysis. Perhaps if the question of the validity of Miller's price programs were presented under Indiana's own antitrust law, I.C. 24–1–2–1 (Burns Code Ed.1996), this court would be more receptive to Miller's invitation to apply a version of the federal "rule of reason" test. Much like the Sherman Act, I.C. 24–1–2–1 prohibits "[e]very scheme, contract, or combination in restraint of trade or commerce." This court has noted that I.C. 24–1–2–1 "has been held to be modeled after section 1 of the Sherman Antitrust Act ... and has been interpreted consistent with federal law interpreting [the Sherman Act]." *Rumple v. Bloomington Hosp.* (1981) Ind.App., 422 N.E.2d 1309, 1315, *trans. denied*, (1981) Ind., 429 N.E.2d 214. However, Miller's attempts to fit this case within the rubric of antitrust law notwithstanding, this is not an antitrust case. Indiana chose to ignore federal antitrust doctrine regarding territorial restrictions, at least in the context of alcoholic beverages, when the IABC promulgated Rule 28 flatly prohibiting such restrictions without regard for reasonableness. This case does not arise under nor does it involve either federal or state antitrust laws. Rather it arises under, and has been litigated as a question involving the interpretation and application of Indiana's alcoholic beverage laws and regulations. It is to these we must turn in order to determine whether the trial court properly entered summary judgment against Miller.

 Our inquiry into the meaning of Rule 28's prohibition on "efforts to restrict" begins with a recognition that rules which apply to the construction of statutes also apply to the construction of administrative rules and regulations. *Indiana Dep't of Natural Resources v. Peabody Coal Co.* (1995) Ind.App., 654 N.E.2d 289. Of course, properly adopted administrative rules and regulations have the force and effect of law. *Dep't of Fin. Inst. v. Johnson Chev. Co.* (1950) 228 Ind. 397, 92 N.E.2d 714. When construing the meaning of a statute, the court's objective is to determine and give effect to the intent of the legislature. *Hilburt v. Town of Markleville* (1996) Ind.App., 649 N.E.2d 1036, *trans. denied.* The best evidence of

legislative intent is the language of a statute itself. *Y.A. by Fleener v. Bayh* (1995) Ind. App., 657 N.E.2d 410. When construing the language of a statute, the Court of Appeals is bound to apply the plain and ordinary meaning of words and phrases. *Lewis v. Bd. of Sch. Trustees* (1996) Ind.App., 657 N.E.2d 180. *reh'g denied, trans. denied.* "Effort" is defined as "an attempt; an endeavor" and "to try." Black's Law Dictionary 515 (6th ed. 1990). "Restrict" is defined to mean "[t]o restrain within bounds; to limit; to confine." *Id.* at 1315. However, simply restating Rule 28 to prohibit "attempts to confine" does not significantly advance our understanding of the rule.

 Legislative intent may also be ascertained by reference to the goals and purposes of the statute and the reasons and policies underlying the statute's enactment. *Hilburt, supra,* 649 N.E.2d 1036. Moreover, legislative intent may be identified and effectuated by examining the act as a whole, the law existing before its passage, changes made to the law since enactment and the reasons for those changes. *Froberg v. Northern Indiana Constr. Inc.* (1981) Ind. App., 416 N.E.2d 451. An examination of the law regarding exclusive territories for distributors reveals, as we have seen, that Indiana has from time to time either required or prohibited exclusive territories for distributors of alcoholic beverages. Further, as noted, treatment of territorial restrictions has also varied under federal antitrust law. From 1967 until 1976 these exclusive territories were illegal under the Sherman Act. However, in 1976 the United States Supreme Court ruled that territorial restrictions imposed by manufacturers upon distributors were acceptable so long as they passed muster under the "rule of reason." Indiana could have accepted the federal rule by remaining silent upon the subject. Nevertheless, this state chose to disregard the federal standard in 1979 when the IABC implemented Rule 28, prohibiting outright the imposition of territorial restrictions upon distributors of alcoholic beverages. We may safely say from this brief history that Rule 28 embodies the clear intention that the restriction of distributors to exclusive geographical ter-

ritories is prohibited regardless of whether such restriction is "reasonable."

The notion that geographically restricting distributors of alcoholic beverages is strongly disfavored in this state is also evident from the history of Rule 28 since its promulgation in 1979. Rule 28 has been the subject of numerous legislative and judicial challenges. In 1979 and 1981 the Indiana General Assembly defeated bills designed to impose geographic territories upon beer distributors. In 1982 the IABC held a hearing to consider whether Rule 28 should be repealed. The Commission unanimously voted to retain Rule 28 for the following reasons:

"First, a ban on exclusive territories is consistent with [the then Governor] Orr Administration's basic commitment to free enterprise, competitive markets, and lower consumer prices. Second, the retention[ ] of Rule 28 is consistent with the wishes of the General Assembly which has consistently and specifically declined to establish territories through Beer Baron legislation. And third, the current regulation is in the best interest of the consuming public."

*United Beverage Co. v. Indiana Alcoholic Beverage Comm'n* (1983) N.D. Ind., 566 F.Supp. 650, 654 (quoting Alcoholic Beverage Commission Minutes, April 21, 1982), *aff'd as modified*, (1984) 7th Cir., 760 F.2d 155. In 1983 an unsuccessful attempt was made to repeal Rule 28 by withdrawing the IABC's authority to promulgate the rule. Another effort in the House to invalidate Rule 28 failed in 1985. In 1986 the Senate failed to

pass a proposed measure imposing exclusive territories upon beer wholesalers. In 1989 both the House and the Senate passed a bill to strike down Rule 28 except as related to liquor. However, the proposal was vetoed by Governor Bayh, and the General Assembly failed to overcome the veto. In 1992 our Supreme Court upheld the validity of Rule 28 against a challenge brought by a group of beer distributors. *Barco Beverage Corp., supra*, 595 N.E.2d 250. The refusal of the IABC and the Indiana General Assembly to repeal or amend Rule 28 in the face of such frequent challenge indicates to this court the strong legislative intention to maintain Indiana's admittedly unique prohibition [9] against the imposition of geographic restrictions on distributors of alcoholic beverages.[10]

Rule 28 clearly embodies the policy, which the General Assembly has consistently affirmed, that territorial restrictions on the distribution of alcoholic beverages have no place in Indiana. We must determine the legislative intent contained in Rule 28's proscription of "efforts to restrict" against the backdrop of this policy. Rule 28 prohibits the direct or indirect imposition of territorial restrictions upon beer distributors. It also forbids a brewer from attempting to restrict a distributor to its APR. Further, I.C. 7.1–1–2–5 (Burns Code Ed.1996) forbids one from doing indirectly what one could not do directly under the alcoholic beverage laws. Thus, read in conjunction with I.C. 7.1–1–2–5, Rule 28 prohibits indirect "efforts to restrict". Rule 28's prohibition against even

---

9. Indiana appears to be the only state which specifically prohibits exclusive territories for beer distribution. *State of New York by Abrams v. Anheuser–Busch, Inc.* (1993) E.D.N.Y., 811 F.Supp. 848, 854. Of the roughly 40 states which have legislatively addressed the issue, most mandate exclusive territories, while the rest expressly permit exclusive territories. *Id.*

10. This situation may be roughly viewed as analogous to the doctrine of legislative acquiescence, under which a longstanding publicly known administrative interpretation of a statute dating from the time of the statute's enactment with no substantial change made to the statute raises the strongly persuasive presumption that the legislature has acquiesced in the agency's interpretation. *See Mance v. Bd. of Dir. of the Public Employees' Retirement Fund* (1995) Ind.App., 652 N.E.2d 532, *trans. denied*. While the legislature

cannot be said to have acquiesced in any particular interpretation of Rule 28, the General Assembly's continual refusal to repeal or amend the rule strongly indicates the legislature's approval of the policy embodied in Rule 28. As our Supreme Court has noted in response to a challenge to the IABC's authority to promulgate Rule 28:

"[h]ad the legislature believed that Rule 28 was not in conformance with its policy or was outside of the powers delegated to the Commission, it has had several opportunities either to repeal Rule 28 or to amend the statute so as to deny the Commission the power to promulgate such a rule. Ultimately, the legislature has rejected these options, giving credence to the Commission's argument that Rule 28 is valid because of legislative acquiescence."

*Barco Beverage Corp., supra*, 595 N.E.2d at 255.

indirect attempts to confine a distributor to its APR, coupled with Indiana's strong policy against the imposition of geographical restrictions on the distribution of alcoholic beverages, persuades this court that the prohibition against "efforts to restrict" must be read strictly to implement this policy. The language of Rule 28, when considered in light of the legislature's above-described expressions of policy, simply cannot be read to permit activities which, while clothed in the language of "APR maintenance" and the like, constitute "efforts to restrict" a distributor to its APR. Rather, Rule 28 must be read as a prophylactic measure designed not simply to prevent the direct and heavy-handed imposition of geographic territories but to prevent their incremental and backhanded encroachment as well.

Under Miller's price promotion and VAA programs, a distributor is to be reimbursed less for beer sold outside of its APR than for beer sold within its APR. This means that, in effect, a distributor is charged a higher price for beer sold outside its APR. Miller argues that the differential amounts are economically insufficient to confine a distributor to its APR and points to the fact that BCB has continued to sell Miller products outside of its APR despite the reimbursement differential. Miller essentially argues that activities which do not actually, or which are not sufficiently economically significant to, restrict a distributor to its APR should not be held to constitute "efforts to restrict". Miller's understanding of Rule 28 is clearly at odds with the understanding the court finds to be mandated by its language, underlying policy and strong legislative intent. Rule 28 proscribes all attempts to confine a distributor to its APR. Further, it acts as a protective measure against actions which could lead to the incremental imposition of territorial restrictions.

Miller's price promotions make it more expensive for distributors to sell beer outside of their APRs. When the cost of selling beer outside of a distributor's APR is increased beyond a certain point, such sales will be discouraged. While Miller claims that the inter- and intra-APR price differentials have not been sufficiently significant to discourage extra-APR sales by distributors, it is clear that the price promotions do not limit the extent to which Miller may increase the cost of out-of-APR sales. Moreover, as we have seen, Rule 28 does not merely prohibit the successful restriction of distributors. It also enjoins brewers and others from simply trying to confine their distributors to particular territories. Further, as Miller readily admits, its price promotion changes were made "[i]n an effort to encourage [distributors] to concentrate [their] sales efforts on Miller brands in retail locations within [their] assigned area of primary responsibility." Record at 36. This necessarily means that Miller intended that its distributors decrease sales outside of their APRs.

In light of our conclusion that Rule 28's prohibition upon "efforts to restrict" represents the first line of defense against the imposition of exclusive geographic territories, this court has little difficulty determining as a matter of law that Miller's price promotion programs violate Rule 28. Miller's program makes it more expensive for distributors to sell beer outside of their APRs, contains no limit upon the potential cost of extra-APR sales, and was admittedly implemented to encourage distributors to concentrate their sales efforts within rather than without their APRs. Miller's price promotions constitute "efforts to restrict" distributors to their APRs within the meaning of Rule 28.

As counsel for Miller candidly stated during oral argument, brewers would prefer exclusive territories for distributors. Miller advances a variety of economic justifications supporting its view that some degree of territorial exclusivity is in the best interests of brewers, distributors and the consuming public. We note, however, that it is the duty of the courts to adjudicate existing controversies by interpreting the law, including the enactments of the legislature as well as administrative rules promulgated thereunder. Under the Indiana Constitution, it is the legislature which exercises the lawmaking function. This function encompasses policy determinations about what the law should be based upon an assessment of the needs of our citizens. Our interpretation of Rule 28 is based upon the intent and policy underlying the rule as expressed by the legislature and

the IABC. The Court of Appeals is bound to recognize and give effect to this intent. Miller's justifications for reading Rule 28 to permit its price promotions notwithstanding, the law of this state simply does not permit a reading of Rule 28 which allows a brewer to try to confine its distributors to their APRs upon the notion that such restriction is ultimately economically beneficial.[11]

We find no genuine issues of material fact and conclude as a matter of law that Miller's price promotion programs violate 905 I.A.C. 1–28–1. BCB's motion for summary judgment was therefore properly granted. Because the trial court is affirmed upon this ground, we need not determine whether summary judgment was properly granted as to I.C. 7.1–5–9–2, I.C. 7.1–5–5–7 or I.C. 7.1–5–5–9.

Judgment affirmed.

BAKER and BARTEAU, JJ., concur.

---

11. An argument could be presented that our interpretation of Rule 28 effectively and impermissibly rewrites the rule by ignoring the provision which specifically acknowledges and permits the creation of APR's. The argument would be that, at best, our decision could be viewed as determining that the provisions are in conflict.

As is our duty when possible, we must attempt to harmonize the provisions. Accordingly, we must acknowledge that existence of APR's must necessarily carry with it some impact upon the activities of distributors within and without those areas. Accordingly, the argument would imply that the pricing programs here considered must be approved as within the permissive purview of the Rule.

This hypothetical argument may have merit, but only to the extent that the brewer-distributor relationship might be affected by policy, marketing, advertising and servicing determinations made upon the basis of APR's as a factor, whether controlling or not. We are not inclined to speculate as to what business practices might reflect the existence of APR's yet remain permissible under the Rule.

Suffice it to say that we hold only that the programs here involved are not permitted under Rule 28.