

**FILED**

Feb 02 2016, 8:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Gregory F. Zoeller<br>Attorney General | Mark A. Foster<br>Foster, O'Daniel, Hambidge &<br>Lynch, LLP<br>Evansville, Indiana |
| Kyle Hunter<br>Deputy Attorney General<br>Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana and Indiana Bureau of Motor Vehicles,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>Nicholas Hargrave,<br><br>*Appellee-Plaintiff* | February 2, 2016<br><br>Court of Appeals Case No.<br>82A01-1504-CR-137<br><br>Appeal from the Vanderburgh Superior Court<br><br>The Honorable Mary Margaret Lloyd, Judge<br><br>The Honorable J. August Straus, Magistrate<br><br>Trial Court Cause No.<br>82D05-1404-CM-1289 |

**Vaidik, Chief Judge**

# Case Summary

[1] After Nicholas Hargrave was charged with operating a motor vehicle while intoxicated and operating a motor vehicle while intoxicated in a manner that endangered a person, Hargrave surrendered his Commercial Drivers License (CDL) and pleaded guilty. The trial court withheld judgment of conviction, and Hargrave was ordered to participate in a diversion program. Hargrave's case was deferred with a provision that it would be dismissed if he successfully completed the diversion program. In the meantime, the Bureau of Motor Vehicles (the BMV) refused to reinstate Hargrave's driving privileges without proof he held SR22 insurance. After the trial court granted Hargrave's petition asking it to order the BMV to reinstate his driving privileges without requiring him to provide proof of SR22 insurance, the BMV intervened in the case and filed a motion to correct error. In this motion, the BMV asked the trial court to determine that 1) Hargrave was not eligible for a diversion program because he held a CDL at the time of the offense, and 2) Hargrave was required to provide proof of insurance for three years following the termination of his suspension. The trial court denied the motion, and the State appealed.

[2] Because the BMV properly interpreted federal regulations adopted by Indiana statutes to mean that a person who holds a CDL at the time he commits a traffic violation may not participate in a diversion program, the trial court erred in denying the State's motion to correct error on this issue. In addition, because Hargrave's driving privileges were suspended under Indiana Code section 9-30-6-9, Hargrave is required to file proof of financial responsibility for three years

following the termination of his suspension under Indiana Code section 9-30-6-12, and the trial court erred in denying the State's motion to correct error on this issue as well. We therefore reverse the trial court's denial of the State's motion to correct error.

# Facts and Procedural History

[3] At approximately 1:00 a.m. on April 2, 2014, three Vanderburgh County Sheriff's Office deputies were dispatched to an intersection where they found twenty-eight-year-old Nicholas Hargrave slumped over in the driver's seat of his pick-up truck. When Deputy Mark Harrison opened the unlocked driver's-side door, the deputy immediately noticed a strong odor of alcohol. When the deputy asked Hargrave if he knew where he was, Hargrave responded with slurred speech that he was at a bar. When he exited his truck, Hargrave was unsteady on his feet. The deputies transported him to the Vanderburgh County Confinement Center, where he failed three standardized field sobriety tests and submitted to a chemical breath test, which revealed he had an alcohol concentration equivalent to .21 grams of alcohol per 210 liters of breath at approximately 2:00 a.m. The State charged Hargrave with one count of operating a motor vehicle while intoxicated as a Class A misdemeanor[1] and one

---

[1] Ind. Code § 9-30-5-1(b).

count of operating a motor vehicle while intoxicated in a manner that endangered a person as a Class A misdemeanor.[2]

[4] At the time of his arrest, Hargrave had a commercial driver's license (CDL). At the April 2 initial hearing, the trial court recommended the suspension of Hargrave's operator's license for 180 days based upon the court finding probable cause to believe Hargrave committed the charged offenses.[3] The Bureau of Motor Vehicles (the BMV) immediately suspended Hargrave's license, effective April 2. Two weeks later, Hargrave surrendered his CDL.

[5] On May 23, Hargrave pleaded guilty to the charged offenses. The trial court withheld the judgment of conviction and ordered Hargrave to participate in a diversion program.[4] Hargrave's case was deferred until July 1, with the provision that it would be dismissed upon Hargrave's successful completion of the diversion program.

[6] On July 1, Hargrave filed a petition wherein he explained to the trial court that he had attempted to have his operator's license reinstated without providing

---

[2] Ind. Code § 9-30-5-2(b).

[3] Indiana Code section 9-30-6-9(c) provides in relevant part that "[i]f the affidavit under section 8(b) of this chapter states that a chemical test resulted in prima facie evidence that a person was intoxicated, the bureau shall suspend the driving privileges of the person" for 180 days or until the court notifies the BMV that the charges have been disposed of, whichever comes first. Here, the affidavit provided that Hargrave had an alcohol concentration equivalent to .21 grams of alcohol per 210 liters of breath, which is prima facie evidence that a person is intoxicated. *See* Ind. Code § 9-13-2-131 (stating that prima facie evidence of intoxication includes evidence that at the time of an alleged violation the person had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per two hundred ten (210) liters of the person's breath).

[4] *See* Ind. Code § 12-23-5 *et seq.*

proof that he had obtained SR22 insurance.[5]  However, the BMV refused to reinstate his license without such proof.  Hargrave asked the trial court to order the BMV to reinstate his driving privileges without requiring him to provide proof of SR22 insurance.  At a hearing on the petition, defense counsel reported that Hargrave was participating in the diversion program and doing fine. Counsel asked the trial court for a progress hearing on October 15.  The State did not object to any of Hargrave's requests, and the trial court granted the petition, reduced Hargrave's suspension to ninety days, and scheduled a hearing for October 15.

[7]     Three weeks later, on July 28, 2014, the BMV filed a motion to intervene as well as a motion to correct error asking the trial court to vacate its July 1, 2014, order.  Specifically, the BMV asked the trial court to determine that 1) pursuant to 49 CFR § 384.226, which was adopted by Indiana Code section 9-24-6-2(d), Hargrave was not eligible for a diversion program because he held a CDL at the

---

[5] The BMV requires certain persons who have had their driving privileges suspended to hold SR22 insurance. The BMV explains SR22 insurance as follows on its website:

> All motorists that operate a motor vehicle on Indiana roadways are required to maintain the state's minimum amount of liability insurance coverage for the vehicle they operate.... If your driving privileges are suspended upon conviction of certain court-related offenses, or for insurance violations, Indiana Law may require you to hold SR22 insurance.  Your insurance provider must electronically file proof of future financial responsibility with a SR22 form for you to be reinstated.  The SR22 requirement, along with any reinstatement fees, must be satisfied before your driving privileges will be reinstated.  The SR22 form demonstrates that you have a motor vehicle insurance policy that meets the state's minimum standards, and it cannot be cancelled without prior notice given to the Indiana BMV.

Indiana Bureau of Motor Vehicles, *Proof of Financial Responsibility*, at http://secure.in.gov/bmv/2372.htm (last visited January 8, 2016).

time he committed the offense; and 2) Hargrave was required to file an SR22 certification as proof of insurance for three years following the termination of his suspension.

[8] At a hearing on the BMV's petition, the trial court admitted into evidence a January 2008 letter from then-BMV Chief Legal Counsel to Hargrave's counsel. Specifically, the letter, which was presumably unrelated to counsel's representation of Hargrave, provided that it was the position of the BMV and the Attorney General that if an individual "surrender[ed] his CDL after an arrest for driving while intoxicated, but before entry into a diversionary program and before a conviction that is defined by Federal Regulations, he would then be eligible for a diversionary program." Hargrave's Ex. 1.

[9] However, counsel for the BMV explained that the letter was written in 2008, "two or three General Counsels ago for the BMV, at least one Attorney General back, and several years ago." Tr. p. 16. Counsel further explained that the position of the BMV and Attorney General had changed. According to the BMV's counsel, the BMV "believe[d] in reading 49 CFR 384.226, if the Court defers the judgment with a person who has a CDL at the time of the incident, that being the OWI, that is considered masking and risks a large amount of federal [dollars] in deferring that judgment." *Id.*

[10] Following the hearing, the trial court denied the BMV's motion to correct error. The State appeals.

# Discussion and Decision

[11] The State argues that the trial court erred in denying its motion to correct error. This court reviews the trial court's decision to deny a motion to correct error for an abuse of discretion. *Garrett v. Spear*, 24 N.E.3d 472, 473 (Ind. Ct. App. 2014). A trial court abuses its discretion when its decision is contrary to law. *Id.* at 473-74.

[12] When an administrative agency charged with enforcing a statute provides a reasonable interpretation of the statute, this Court should defer to the agency. *Ind. Wholesale Wine & Liquor Co. v. State ex rel Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind. 1998). This deference recognizes the "general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations." *Id.*

# I. Diversion Program

[13] The State first contends that the "trial court's decision withholding judgment on Hargrave's conviction for operating a motor vehicle while intoxicated and allowing him to enter a diversion program is contrary to Indiana and federal law." Appellant's Br. p. 5.

[14] In 1991, the Indiana General Assembly enacted Indiana Code section 9-24-6-2, which requires the BMV to adopt rules to regulate persons holding CDLs and to comply with the Federal Motor Carrier Safety Improvement Act. Pub. L. 2-1991, § 12. The purpose of this Act is to reduce the number and severity of

accidents involving commercial motor vehicles. 49 C.F.R. §350.101. The General Assembly has amended Indiana Code section 9-24-6-2 several times over the years to ensure that the BMV complies with the specific federal statutes and regulations governing CDLs. *See* P.L. 66-1992, § 13; P.L. 123-2002, § 15; P.L. 219-2003, § 4; P.L. 123-2005, § 1; P.L. 188-2006, § 5; P.L. 76-2009, § 1; P.L. 65-2010, § 6; P.L. 85-2013, § 30; P.L. 149-2015, §59.

[15] In July 2002, the federal Department of Transportation promulgated 49 C.F.R. § 384.225 and § 384.226. C.F.R. § 384.225(b) and (d) require states to post and maintain as part of the Commercial Drivers License Information System (CDLIS) "[a]ll convictions, disqualifications and other licensing actions for violations of any State or local law relating to motor vehicle-traffic control . . . committed in any type of vehicle" for at least three years or longer. C.F.R. § 384.226 provides that:

> The State must not mask, defer imposition of judgment, or allow an individual to enter into a diversion program that would prevent a CLP or CLD holder's conviction for any violation, in any type of motor vehicle, of a State or local traffic control law (other than parking, vehicle weight, or vehicle defect violations) from appearing on the CDLIS driver record, whether the driver was convicted for an offense committed in the State where the driver is licensed or another State.

[16] A state that violates these federal regulations faces a loss of up to five percent of federal highway funds and decertification of its CDL program. *See* 49 C.F.R. § 384.401; 49 C.F.R. § 384.405. In the legislative session immediately following the promulgation of 49 C.F.R. §§ 384.225 and 384.226, the Indiana General

Assembly amended Indiana Code section 9-24-6-2 to specifically adopt 49 C.F.R. § 384 as Indiana law. P.L. 219-2003, § 4.

[17]     Here, as the agency tasked with interpreting and implementing motor vehicle laws, the BMV has interpreted 49 C.F.R. § 384.226, as adopted by Indiana Code section 9-24-6-2, to "mean that a person who holds a CDL license at the time he commits a traffic violation may not participate in a diversion program or have judgment deferred on that conviction." Appellant's Br. p. 7. We agree with the State that this is a reasonable interpretation of the federal regulation adopted by our state's legislature.[6]

[18]     To the extent that Hargrave argues that his increased responsibility and accountability ceased to exist when he surrendered his CDL, he is mistaken. We agree with the BMV that Hargrave's position cannot be correct in light of the purpose and intent of the CDLIS, which is to provide a full and accurate accounting of an individual's driving history while he held a CDL. We agree with the State that "[a]llowing Hargrave to surrender his license, avoid his conviction, and possibly return to driving professionally with no record of the offense is precisely what the anti-masking law is designed to prevent.

---

[6] Hargrave's reliance on an eight-year-old letter written by a previous BMV general counsel is misplaced. Trial testimony from a current BMV counsel revealed that the position of the BMV has changed, and that the BMV currently interprets the federal regulations and state statute to prohibit the trial court from withholding judgment on Hargrave's conviction and allowing him to enter a diversion program. We give more weight to the testimony of a current BMV counsel than we do to an eight-year-old letter. *See Miller Brewing Co. v. Bartholomew Cnty. Beverage Co.,* 674 N.E.2d 193, 201 (Ind. Ct. App. 1996) (explaining that Commission's rescission of order interpreting alcohol beverage statute constituted abandonment of its prior position and resulted in no deference being due), *trans. denied.*

Hargrave's suggested interpretation of the law is unreasonable, as it would permit the very mischief that the law is designed to prevent." Appellant's Br. p. 9.

[19] For the foregoing reasons, the trial court's decision withholding judgment on Hargrave's conviction for operating a motor vehicle while intoxicated and allowing him to enter a diversion program is contrary to Indiana and federal law, and the trial court therefore abused its discretion in denying the BMV's motion to correct error on this issue.

## II. Proof of Future Financial Responsibility

[20] The State also argues that the trial court "further abused its discretion when it ordered that Hargrave was exempt from providing proof of future financial responsibility before reinstating his operator's license." Appellant's Br. p. 11. Indiana Code section 9-30-6-12, which provided in relevant part as follows at the time of the offense, is dispositive:

> (a) If a court recommends suspension of driving privileges under this chapter [9-30-6], IC 9-30-5, or IC 9-30-9, the bureau shall fix the period of suspension in accordance with the recommendation of the court.

> (b) . . . during the three (3) years following the termination of the suspension the person's driving privileges remain suspended until the person provides proof of financial responsibility in force under IC 9-25.

[21] Here, as previously stated, Hargrave's driving privileges were suspended pursuant to Indiana Code section 9-30-6-9(c) where the affidavit stated that a chemical test resulted in prima facie evidence that Hargrave was intoxicated. Indiana Code section 9-30-6-12 provides that if the court recommends suspension of driving privileges under that chapter, the person's driving privileges remain suspended until the person provides proof of future financial responsibility. The State is therefore correct that Hargrave is required to file proof of financial responsibility for three years following the termination of his suspension under Indiana Code section 9-30-6-12, and the trial court erred in denying the BMV's motion to correct error on this issue.

[22] Reversed.

Pyle, J., concurs.

Robb, J., concurring with separate opinion.

# COURT OF APPEALS OF INDIANA

State of Indiana and Indiana
Bureau of Motor Vehicles,

*Appellant-Defendant,*

v.

Nicholas Hargrave,

*Appellee-Plaintiff*

Court of Appeals Case No.
82A01-1504-CR-137

**Robb, Judge, concurring.**

I concur in the majority opinion. I write separately only to note the inconsistent treatment of those who currently hold CDLs and those who do not (but could in the future). As the majority notes, allowing an individual to surrender her CDL, avoid conviction by completing a diversion program, and then return to driving professionally with no record of the offense is "precisely what the anti-masking law is designed to prevent." Slip op. at ¶ 18. But if an individual does not hold a CDL at the time of the offense, that individual can participate in a diversion program and later drive professionally with no record of the offense. *See* 49 C.F.R. § 384.225(a)(1) (requiring each state to maintain as part of the CDLIS driver record of each CDL holder "[a]ll convictions, disqualifications and other licensing actions for violations of any State or local

law relating to motor vehicle traffic control (other than parking, vehicle weight, or vehicle defect violations) committed in any type of vehicle"). In light of the purpose of the Motor Carrier Safety Improvement Act, *i.e.* "to reduce the number and severity of accidents involving commercial motor vehicles," slip op. at ¶ 14, I find it difficult to justify this inconsistency.