BARCO BEVERAGE CORPORATION,
et al., Appellants (Plaintiffs),

v.

INDIANA ALCOHOLIC BEVERAGE
COMMISSION, et al., Appellees
(Defendants).

No. 49A02–8809–CV–343.

Court of Appeals of Indiana,
Second District.

Dec. 11, 1990.

Phillip A. Terry, Brian K. Peters, McHale, Cook & Welch, P.C., Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for Indiana Alcoholic Beverage Comm.

Philip J. Ripani, David J. Bodle, Henderson, Daily, Withrow & Devoe, Indianapolis, for Indiana Liquor Stores Ass'n, Inc.; Indiana Retail Council, Inc.; Beermart, Inc.; Beerco, Inc. and Kebe Enterprises, Inc.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiffs-appellants Barco Beverage Corporation, DeKalb Distributing and Lincoln Hills Beverage (hereinafter collectively referred to as Barco) appeal from a judgment in favor of the Indiana Alcoholic Beverage Commission (Commission), claiming the trial court erred when it determined the Commission had not exceeded its statutory authority when it promulgated a rule prohibiting territorial restraints on the sale of alcohol.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the trial court's judgment reveal that Barco, representing the interests of wholesalers of alcoholic beverages, brought suit against the Commission on August 10, 1987, to determine the validity of 905 I.A.C. 1–28–1(3) (Rule 28), adopted in 1979, which provides in pertinent part:

*"It shall be unlawful* for any person engaged in business as *a distiller, brewer, rectifier, vintner,* or other producer, importer, or as a wholesaler of liquor, wine, beer or malt beverages, directly or indirectly, or through an affiliate *to:*

.    .    .    .    .

(3) Product Distribution—*Restrict* by agreement or otherwise, *the sale or resale of liquor, wine, beer or malt beverages to a given geographical area or to permittees,* who are otherwise entitled to buy, within a given geographical area. This section shall not be deemed to prohibit the designation of an 'area of primary responsibility', however, efforts to restrict sales to only the designated area of primary responsibility are deemed to be prohibited."

(Emphasis supplied.)

The trial court allowed several trade associations and alcoholic beverage retailers (Intervenors) to intervene in the action as defendants.

The trial court rendered its judgment on the parties' cross-motions for summary judgment. All parties agreed there was no genuine issue of material fact, and that only a question of law was to be decided. On July 13, 1988, the trial court entered its judgment and determined that the Commission did not exceed its authority when it promulgated Rule 28.

### ISSUE

Whether the Commission had authority to promulgate and enforce Rule 28? [1]

### DECISION

*PARTIES' CONTENTIONS*—Barco argues that the Commission usurped the General Assembly's constitutional role as legislator when it promulgated Rule 28. It asserts that the Commission determined public policy, for which it had no guidance from the General Assembly, when it issued Rule 28, and therefore, under traditional separation of powers doctrine, Rule 28 is unconstitutional.

The Commission and the Intervenors respond that the statutory scheme which authorized the Commission to regulate the alcoholic beverage industry contains sufficient standards to guide the Commission in the promulgation of its rules. The Commission and the Intervenors also claim that the statutory scheme contains explicit policy principles which authorize the making of Rule 28.

*CONCLUSION*—The Commission possessed the authority to promulgate Rule 28 as it relates to brewers, vintners and beer and wine wholesalers, but it exceeded its authority when it included distillers, rectifiers and liquor wholesalers in the rule.

The question we must decide, which has never before been considered by an Indiana court, is whether Rule 28 is within the scope of Title 7.1 of the Indiana Code. Rule 28, in pertinent part, provides that it shall be unlawful for beer, wine and liquor producers and wholesalers to restrict the sale of alcoholic beverages to given geographic areas. Essentially, what the rule seeks to do is to maintain geographically open markets between the wholesalers and retailers of alcoholic beverages.

Historically, the issue of territorial limitations has received a great deal of attention from the legislature and the courts. In the first statute regulating the alcoholic beverage industry in Indiana after the passage of the Twenty-first amendment to the United States Constitution in 1933, whole-

---

1. The issue to be decided is not, as Barco seems to suggest, whether Title 7.1 of the Indiana Code is an unconstitutional grant of legislative power to an administrative agency. Throughout its briefs, Barco phrases the issue as whether the Commission exercised "non-delegable" powers. The "delegable"/"non-delegable" issue arises when determining whether a *statute* violates the separation of power doctrine, not when determining whether an agency has over-stepped its statutory authority. *See, e.g., A.L.A. Schechter*

*Poultry Corp. v. U.S.* (1935), 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570.

The trial court determined that all parties agreed that Title 7.1 was constitutional. *Record* at 893. This court, in *Indiana Alcoholic Beverage Comm'n v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259, *trans. denied,* determined that Title 7.1 contained sufficient standards to guide the Commission in the exercising of its statutory authority, and that Title 7.1 was a constitutional delegation of authority.

salers were limited in number and restricted geographically to selling alcoholic beverages only in specific areas, usually counties. 1933 Ind.Acts, Ch. 80, Sec. 6, p. 492. The quotas and territorial limitations were repeated when the legislature created the first Indiana Alcoholic Beverage Commission in 1935. 1935 Ind. Acts, Ch. 226, Sec. 5, p. 1064.

In 1939 the legislature abandoned the quota system and no longer limited wholesalers to selling in a specific territory. 1939 Ind.Acts, Ch. 29, Sec. 2, p. 86. Producers and wholesalers, however, executed agreements which gave some wholesalers exclusive distribution rights in certain geographic territories. In 1965, the legislature again adopted a quota system limiting the number of wholesalers in the state. 1965 Ind.Acts, Ch. 255, Sec. 1, p. 639.

In 1967, the United States Supreme Court addressed the question of vertical restraints in *United States v. Arnold, Schwinn & Company* (1967), 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249. The Court concluded that the vertical restraint of geographic territorial limitations among producers and distributors was *per se* illegal under the Sherman Anti-trust Act, 15 U.S.C. § 1 et seq. After *Schwinn,* the exclusive franchise agreements between alcoholic beverage producers and wholesalers became unenforceable.

In 1973, the General Assembly enacted Title 7.1 to regulate and limit the manufacture, sale, possession, and use of alcohol; to protect the economic welfare, health, peace and morals of the people; and to provide for the raising of revenue. Ind. Code 7.1–1–1–1 (1988). The current Commission was established to administer the Title and was given the power to promulgate rules and regulations. Ind.Code 7.1–2–1–1; IC 7.1–2–3–2, 7.

Title 7.1 contains five articles which encompass 50 separate chapters regulating, sometimes in great detail, almost all aspects of the production, distribution, and sale of alcoholic beverages. This rather elaborate statutory scheme specifically delineates its regulation of the alcohol industry by distinguishing between brewers (producers of beer), vintners (producers of wine), and distillers and rectifiers (producers and purifiers of liquor). The statutory scheme consistently maintains this distinction between beer, wine and liquor throughout its treatment of the wholesaling and retailing of alcoholic beverages.

After Title 7.1 had been enacted, some wholesalers began a practice of offering price discounts to retailers who purchased alcoholic beverages from wholesaler's docks. Retail hauling and transshipping fostered competition between wholesalers for those retailers who chose to bear the cost of transporting alcoholic beverages from the wholesalers. These practices generated efforts by the wholesalers to amend Title 7.1 to allow territorial limitations.

Efforts had been made in the Indiana General Assembly as early as 1974 to produce legislation which would allow wholesalers to designate exclusive territories for the distribution of all types of alcoholic beverages (the so-called "Beer Baron Bills"). The efforts continued after the Commission promulgated Rule 28 and the most recent attempt was vetoed by Governor Bayh in May of 1989.

In 1977, the United States Supreme Court overruled the *Schwinn* decision in *Continental T.V., Inc. v. GTE Sylvania, Inc.* (1977), 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568. The Court determined vertical territorial restraints were not *per se* illegal, but decided, rather, the question of whether a particular restraint was illegal would be determined using the "rule of reason" standard as enunciated in *White Motor Co. v. United States* (1963), 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738, and *Northern Pac. R. Co. v. United States* (1958), 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545.

Rule 28 became effective March 16, 1979, prohibiting vertical territorial restraints in the alcoholic beverage industry. The specific question we consider is whether Rule 28 advances a public policy articulated in Title 7.1 or whether it is in an improper usurpation of the legislature's

role as the architect of public policy.[2] To begin our inquiry, we first look to the pertinent statutes.

Ind.Code 7.1–3–3–5(b) provides, in pertinent part:

"(b) A *beer* wholesaler permittee may possess, transport, sell, and deliver beer to:

(1) another beer wholesaler authorized by the brewer to sell the brand purchased;

(2) a consumer; or

(3) a holder of a beer retailer's permit, beer dealer's permit, temporary beer permit, dining car permit, boat permit, airplane permit, supplemental caterer's permit, or supplemental retailer's permit;

*located within this state....*"

(Emphasis supplied). This statute allows a beer wholesaler to sell to any customer within the state.

Another pertinent statute is IC 7.1–3–13–3(a):

"The holder of a *wine* wholesaler's permit may purchase, import, and transport wine and brandy from the primary source of supply. He may export and transport wine and brandy, by the bottle, barrel, cask, or other container, to points outside this state. He is entitled to sell, furnish, and deliver wine from inventory that has been located on the wholesaler's premises before the time of invoicing and delivery to a wine wholesaler, a wine retailer, a supplemental caterer, a temporary wine permittee, a supplemental retailer, and a wine dealer, but not at retail. He may sell, furnish, and deliver brandy from inventory that has been located on the wholesaler's premises before the time of invoicing and delivery, but not at retail, only to a person who holds a liquor retailer's permit, a supplemental caterer's permit, a supplemental retailer's permit, or a liquor dealer's permit. A wine wholesaler also may sell and deliver wine to a consumer, at his residence, in bottles or other permissible containers in a quantity that does not exceed fifty (50) gallons at any one (1) time."

(Emphasis supplied). This provision allows a wine wholesaler to sell to any qualified customer within the state, and also allows the wine wholesaler to export outside the state.

IC 7.1–3–8–3(c) relates to liquor wholesalers:

"A *liquor* wholesaler may sell, transport, and deliver liquor only to a person who, under this title, holds a:

(1) liquor retailer's permit;

(2) supplemental caterer's permit;

(3) supplemental retailer's permit;

(4) liquor dealer's permit; or

(5) liquor wholesaler's permit.

The sale, transportation, and delivery of liquor shall be made only from inventory that has been located on the wholesaler's premises before the time of invoicing and

---

**2.** It is well-established that an administrative agency may make only those rules which are within the scope of its statutory authority, and it cannot enlarge the scope of its powers. *State v. Driver* (1987), Ind.App., 511 N.E.2d 11; *Indiana Department of State Revenue v. Best Ever Companies* (1986), Ind.App., 495 N.E.2d 785. An administrative agency has no powers which are not expressly or impliedly granted by statute, and all doubtful claims must be resolved against the agency. *Indiana State Bd. of Embalmers v. Kaufman* (1984), Ind.App., 463 N.E.2d 513, *trans. denied.* The rules and regulations promulgated by administrative agencies must be reasonable and reasonably adapted to carry out the purpose for which the agency was created. *Potts v. Review Bd. of Indiana* (1982), Ind.App., 438 N.E.2d 1012, *trans. denied.*

This court, in *Van Allen v. State* (1984), Ind. App., 467 N.E.2d 1210, recognized:

"In passing on the validity of administrative rules and regulations, the only concern of the court is to ascertain whether the will of the legislature has been obeyed. In reviewing the propriety of an administrative regulation, the court must first determine whether the regulation lies within the scope of the authority conferred, it looks to see whether the regulation harmonizes with the plain language of the statute, its origin and its purpose, and must ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring the rule-making power, and then determine whether the regulation is reasonable and not arbitrary."

*Id.* at 1213 (quoting 73 C.J.S. *Public Administrative Law & Procedure* § 93a, at 603–04 (1983)).

delivery, and only in permissible containers and is subject to the rules of the commission fixing the quantity which may be sold or delivered at any one (1) time."

(Emphasis supplied). This statute limits the liquor wholesaler to sell only to those customers with specific permits, each of whom must be a resident of Indiana in accordance with the particular permit's requirements.

From these statutes establishing the scope of wholesalers' permits, we can deduce that the legislature has not expressly forbidden or permitted the use of territorial limitations by alcoholic wholesalers. At best, these statutes give the wholesalers the right to sell anywhere in the state, but they do not guarantee that right or prohibit its alienation.

■ Nothing in these statutes can be construed as either explicitly or implicitly prohibiting wholesalers from contractually limiting their rights to sell anywhere in the state. Absent contrary legislation, there is ordinarily no public policy preventing parties from contracting as they see fit. *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155.

■ Our search of Title 7.1, however, does uncover "contrary legislation" which enunciates a specific public policy which supports the promulgation of, at least a portion of, Rule 28.

Ind.Code 7.1–5–9–2 (1988), provides, in pertinent part:

"(a) Except as provided in subsection (c), it is *unlawful for the holder of a brewer's permit* or for a brewer located outside Indiana that meets the requirements of IC 7.1–3–2–4 and IC 7.1–3–2–5 *to* hold, acquire, possess, own, or *control*, or to have an interest, claim, or title, in or to an establishment, company, or corporation holding or applying for *a beer wholesaler's permit* under this title, or in its business.

(b) Except as provided in subsection (c), it is *unlawful for the holder of a vintner's permit* or for a vintner located outside Indiana *to* hold, acquire, possess, own, or *control*, or to have an interest, claim, or title in or to, an establishment, company or corporation holding or applying for a *wine wholesaler's permit* under this title, or in its business.
. . ."

(Emphasis supplied).

But IC 7.1–5–9–8 is worded differently: "Certain Interests Prohibited. *The holder of a distiller's permit or rectifier's* permit may not own, acquire, or possess a permit to sell liquor at wholesale. A distiller or rectifier *may not have an interest* in the business of a permittee who is authorized to sell beer, liquor, or wine at wholesale or retail."

(Emphasis supplied).

IC 7.1–5–9–2 specifically prohibits brewers and vintners from having any control over the operations of beer or wine wholesalers. This expression of public policy of separating brewers from beer wholesalers and vintners from wine wholesalers is broad and compelling.

In *Jos. Schlitz Brewing Co. v. Central Beverage Co.* (1977), 172 Ind.App. 81, 359 N.E.2d 566, *trans. denied*, this court determined that when it enacted the original provision,[3] "our legislature intended to prohibit brewer interference with management operations other than merely prohibiting brewers from having some financial interest in their wholesaler's businesses." *Id.* at 99, 359 N.E.2d at 578.

This court observed: "The word control has been defined as the exercise of restraining or directing influence over; or to regulate, restrain, dominate, hold from action, overpower, counteract or govern." *Id.* at 100, 359 N.E.2d at 578, *quoting* Black's Law Dictionary, 399 (4th Ed. 1951). We then decided that thirty internal accounting and inventory controls the brewer

---

**3.** IC 7.1–5–9–2 originally provided:
"It is unlawful for the holder of a brewer's permit to hold, acquire, possess, own, or control, or to have an interest, claim, or title, in or to an establishment, company, or corporation holding or applying for a beer wholesaler's permit under this title, or in its business."

sought to impose on the wholesaler violated the statutory provision. *Id.*

Barco argues that the brewers would not be controlling wholesalers with territorial limitations because the wholesalers desire those limitations. The statute, however, does not distinguish between "friendly" control and "hostile" control, but prohibits all control—both voluntary and involuntary. Territorial limitations would allow producers to exercise a restraining influence over significant management operations of wholesalers, and are therefore prohibited by the statute. That the wholesalers desire this control is irrelevant.

Logically territorial limitations would seem to constitute a prohibited form of "control" of beer and wine wholesalers by brewers and vintners. We must conclude that, as it applies to producers and wholesalers of beer and wine, Rule 28 is a valid regulation within the scope of the statute. We cannot, however, so conclude as to Rule 28's validity as to distillers, rectifiers and liquor wholesalers.

The scope of the statute's prohibition for liquor producers and wholesalers is significantly different than that for beer and wine producers and wholesalers. Distillers and rectifiers are only prohibited from having an "interest" in liquor wholesalers. No other limitations on distillers' and rectifiers' dealings with liquor wholesalers appears. We cannot consider this prohibition as broad as that provided for brewers and vintners.

The Commission's argument that the general grants of power found in IC 7.1–1–1–1 and 7.1–2–3–2 and –7 are sufficiently broad to encompass the power to prohibit territorial restrictions, is not persuasive.

This court, in *Kaufman, supra,* was faced with a somewhat analogous contention. The agency had promulgated a regulation limiting licensees from possessing a financial relationship with a cemetery operation or property. The only statutory authority cited by the agency was a general provision which gave the agency the power to regulate embalming and the operation of funeral homes and establishments. In determining the regulation was invalid, it was reasoned that "there is no evidence in the record to provide a nexus between the disputed regulation and the statute or statutes defining the Board's powers, authority, and responsibilities.... Additionally, we are of the opinion that a fair reading of the regulation does not reveal where it ties into the applicable provisions of IC 25–15–1–1 *et seq*....." *Id.* at 522.

Similarly, no nexus between Rule 28 as it applies to distillers, rectifiers and liquor wholesalers, and any applicable provision of Title 7.1 has been established. As this court determined in *Best Ever Companies, supra,* an agency cannot, in its rules and regulations, add to the law, so we must conclude that the Commission was without authority to extend the prohibition of territorial limitations to distillers, rectifiers, and liquor wholesalers. The public policy of separation articulated in IC 7.1–5–9–2 was not adopted in the statute regulating distillers, rectifiers, and liquor wholesalers, IC 7.1–5–9–8.

Through the years of State regulation of the sale and distribution of alcoholic beverages, there has been an ebb and flow in the regulation of this industry as competing interests have sought dominance of the process, somewhat like determining the level of the water in a canal by controlling the locks. At this stage of regulation, as best we can read the relevant statutes, Rule 28 has reached a watermark of allowable regulation only as to brewers, vintners, and beer and wine wholesalers.

The trial court's judgment as to the validity of Rule 28 as it pertains to distillers, rectifiers, and liquor wholesalers is reversed, but in all other respects the trial court's judgment is affirmed.

SHIELDS and HOFFMAN, P.JJ., concur.