**LITTLE BEVERAGE CO., INC. and Miami Beverage, Inc., Appellants–Plaintiffs,**

v.

**Mary DePREZ, as Chairperson, Barbara Glass, as Vice–Chairperson, James L. Davis, as Commissioner, and Gigi Marks, as Commissioner, each in his or her stated official capacity, Indiana Alcohol & Tobacco Commission and Anheuser–Busch, Inc., Appellees–Defendants,**

**Indiana Beverage Alliance, Inc., Zink Distribution Co., LLC, United Beverage Co. of South Bend, Inc. and Monarch Beverage Co., Inc., Appellees–Intervenors.**

No. 49A02–0203–CV–232.

Court of Appeals of Indiana.

Oct. 25, 2002.

David J. Bodle, Timothy J. O'Hara, Scott S. Morrisson, Henderson, Daily, Withrow & DeVoe, Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees, Indiana Alcohol and Tobacco Commission, Its Chairperson, Vice-Chairperson and Commissioners.

Peter J. Rusthoven, Larry A. Mackey, William E. Padgett, John P. Fischer, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee, Anheuser–Busch, Inc.

Scott R. Leisz, Bingham McHale LLP, Indianapolis, IN, Attorney for Appellees, Indiana Beverage Alliance, Inc., Zink Distribution Co., LLC, United Beverage Co. of South Bend, Inc. & Monarch Beverage Co., Inc.

## OPINION

MATHIAS, Judge.

Little Beverage Co., Inc. and Miami Beverage, Inc. (collectively "Little") appeal the trial court's grant of summary judgment in favor of the Alcohol and Tobacco Commission and its commissioners individually (collectively "ATC"), and Anheuser–Busch, Inc. ("A–B"), and its judgment in favor of A–B on the declaratory relief A–B requested in its counterclaim, raising the following issues for review:

I.  Whether, after the repeal of Rule 28, exclusive beer distribution territories are now permitted in Indiana under Title 7.1 of the Indiana Code;

II.  Whether the ATC violated the Administrative Procedures Act by the "sunset" expiration of Rule 28 and by its de facto adoption of the contrary rule;

III.  Whether the expiration of Rule 28 operated as a revocation or altera-tion of Little's Indiana beer wholesaler's permit; and,

IV.  Whether the trial court erred in granting A–B's request for declaratory judgment on its breach of contract counterclaim.

We affirm.

### Facts and Procedural History

In 1973, the Indiana General Assembly repealed Title 7, Alcoholic Beverages, and enacted Title 7.1, Alcoholic Beverages. The general purposes of Title 7.1 are set out in Indiana Code section 7.1–1–1–1: "(a) to protect the economic welfare, health, peace and morals of the people of this state; (b) to regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages; and (c) to provide for the raising of revenue." The General Assembly created the Indiana Alcohol Beverage Commission, currently known as the Indiana Alcohol & Tobacco Commission ("ATC"), to administer Title 7.1 and gave the ATC power to promulgate rules and regulations. Ind.Code § 7.1–2–1–1 (1982 & Supp.2002); Ind.Code § 7.1–2–3–7 (1982). Indiana Code section 7.1–2–3–31 also provides that: "The commission and the chairman shall have, in addition to the express powers enumerated in this title, the authority to exercise all powers necessary and proper to carry out the policies of this title and to promote efficient administration by the commission."

Over the years, pursuant to this authority, the ATC has promulgated a series of rules found in the Indiana Administrative Code title 905. Rule 1–28–1(3) ("Rule 28"), promulgated in 1979, prohibited beer distributors in Indiana from having exclusive territories. In 1996, the General Assembly enacted Indiana Code section 4–22–2.5–2 (the "Sunset Law"), which provides in pertinent part that all administrative rules[1] expire on January 1 of the

---

1. The rules of certain agencies not pertinent here are excepted from this provision.

seventh year after the year in which the rule takes effect, and any administrative rule in force on December 31, 1995, expires on January 1, 2002, if the administrative agency takes no affirmative action to readopt it. Ind.Code § 4–22–2.5–2 (2002).

In June 2001, the ATC posted a notice on its website to explain that it did not intend to readopt Rule 28. On July 1, 2001, and August 1, 2001, the ATC published additional notices in the *Indiana Register* listing the rules it intended to readopt effective January 1, 2002. Rule 28 was not included in this readoption list. On August 28, 2001, the ATC met to receive testimony regarding Rule 28. At the conclusion of this meeting, the ATC voted 3–0 not to readopt Rule 28. This position effectively permitted exclusive beer distribution territories in Indiana effective January 2, 2002. On September 4, 2001, the ATC again published notice of the rules it intended to readopt. This notice also omitted Rule 28. Thus, Rule 28 expired as of January 1, 2002.[2]

Little distributes A–B beer products in Indiana. Its distributorship agreement with A–B was executed in 1997 and provides for an exclusive distributorship for Little in a specified area, unless prohibited by law. Under the agreement, where such exclusivity is legally prohibited, Little's otherwise exclusive territory is designated as its "primary area of responsibility," but it retains the right to sell beer to retailers in other areas, a practice called "transshipping." Under Rule 28, Little did much transshipment and generated a significant portion of its business from selling beer outside its area of primary responsibility. On November 15, 2001, A–B announced to all of its Indiana wholesalers, including Little, that it intended to enforce the exclusive wholesale territories in its distributorship agreements effective January 2, 2002, upon the "sunset" of Rule 28.

On November 28, 2001, Little filed suit against the ATC and A–B seeking injunctive relief to prohibit the sunset of Rule 28. The Indiana Beverage Alliance, Zink Distribution Company, LLC, United Beverage Company of South Bend, Inc., and Monarch Beverage Co., Inc. ("Intervenors") intervened in the suit, arguing in favor of Rule 28's sunset. A–B filed a counterclaim asking for a declaratory judgment that Little would be in breach of contract if it continued transshipping. Both parties moved for summary judgment, stipulating that there were no genuine issues of material fact.

The trial court entered summary judgment in favor of the ATC and A–B and denied Little's motion for summary judgment and its request to temporarily enjoin the expiration of Rule 28, finding that Little had failed to meet its burden of proof on each element which it was required to show to obtain a temporary injunction. Further, the trial court found in favor of A–B on its counterclaim. Little now appeals.

### Standard of Review

When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Ind. Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999); *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.

---

**2.** In the 2002 legislative session, a bill was introduced to reinstate Rule 28, but was defeated in a Senate committee. Appellees' App. pp. 6–7; S.B. 369, 112th Gen. Assem., Reg. Sess. (Ind.2002) *available at* www.in.gov/serv/lsa_billinfo?year=2002 & session =1.

App.1999) (citing Ind. Trial Rule 56(C)). Our standard of review is not altered by cross motions for summary judgment on the same issues. *Ind. Ins. Co.*, 718 N.E.2d at 1152. A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. *Id.* The movant must demonstrate the absence of any genuine issue of fact as to a determinative issue and only then is the non-movant required to come forward with contrary evidence. *Id.* (citing *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind.1994)). This court may not search the entire record but may only consider the evidence that has been specifically designated. *Id.*

All pleadings, affidavits, and testimony are construed liberally and in a light most favorable to the nonmoving party. *May*, 716 N.E.2d at 594. Even when facts are undisputed, summary judgment is not appropriate if those undisputed facts " 'give rise to conflicting inferences which would alter the outcome.' " *Id.* (quoting *Underwood v. City of Jasper Mun. Util. Serv. Bd.*, 678 N.E.2d 1280, 1282 (Ind.Ct.App. 1997), *trans. denied*).

The trial court made findings and conclusions in support of its entry of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *GDC Envtl. Servs., Inc. v. Ransbottom Landfill*, 740 N.E.2d 1254, 1257 (Ind.Ct.App.2000). If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

## I. The Legality of Exclusive Territories After the Repeal of Rule 28

### A. *The History of Rule 28*

Between the repeal of Prohibition in 1933 and 1967, territorial limitations on wholesalers of alcoholic beverages have either been allowed or prohibited at various times by Indiana statutes. *Barco Beverage Corp. v. Ind. Alcoholic Beverage Comm'n*, 595 N.E.2d 250, 253 (Ind.1992). During those thirty-four years, federal law would have allowed such restrictions. However, in 1967, the United States Supreme Court decided *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 382, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), in which it held that a manufacturer could not control the distribution of its products after the point at which they were sold and the risk of loss transferred to the wholesaler. Thus, the court determined that contractual restrictions which limited a dealer or distributor to a geographic area were illegal and a per se violation of the Sherman Antitrust Act. *Id.*

In this legal climate, in 1973, the General Assembly adopted Title 7.1, without explicit language that prohibited exclusive territories. Under *Schwinn*, no such directive was necessary. Four years later, however, the Supreme Court reversed course and overruled *Schwinn* in *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 59, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), effectively permitting exclusive territories as a matter of federal antitrust law. In response to *Cont'l T.V.*, in March 1979, the ATC promulgated Rule 28, which restored the previous *Schwinn* rule prohibiting exclusive territories, this time as a matter of alcoholic beverage regulation within the State of Indiana.

In 1983, the General Assembly considered an amendment to a bill which would have effectively removed the Commission's authority to promulgate Rule 28. *Barco*, 595 N.E.2d at 253. The amendment failed to pass in the House. In 1985, a bill was introduced in the House which sought to invalidate Rule 28, but it also failed to pass. *Id.* One year later, a failed attempt

was made in the Senate to amend a Senate bill to permit exclusive territories for beer wholesalers. *Id.* During the 1989 legislative session, both the Senate and the House passed a bill, which would have overruled Rule 28, but the bill was vetoed by Governor Bayh. *Id.* The bill was then defeated when it was presented to both houses for override following Governor Bayh's veto. *Id.*

However, pursuant to Indiana Code section 4-22-2.5-2, known as the Sunset Law, Rule 28 expired when the ATC failed to readopt it. A bill introduced during the 2002 legislative session, which sought to reinstate Rule 28, was defeated in a Senate committee. Appellees' App. pp. 6-7; S.B. 369, 112th Gen. Assem., Reg. Sess. (Ind. 2002) *available at www.in.gov/serv/lsa_billinfo?year=2002 & session=1.* Prior to Rule 28's expiration, Indiana was the only state in the country that prohibited exclusive territories. *See Miller Brewing Co. v. Bartholemew County Beverage Co., Inc.,* 674 N.E.2d 193, 206 n. 9 (Ind.Ct.App.1996), *trans. denied.*

### B. The Parties' Contentions and Discussion

By statute, beer wholesalers are permitted to sell beer throughout the State of Indiana. Ind.Code § 7.1-3-3-5(b) (1982 & Supp.2002). Various statutes limit who may hold a beer wholesaler's permit. Brewers, such as A–B, are subject to many of these limitations. For instance, Indiana Code section 7.1-3-3-18 speaks to financial control: it prohibits a brewer from having or transferring a financial interest in a beer wholesaler. Also, Indiana Code section 7.1-5-9-2, prohibits a brewer from holding, acquiring, possessing, owning, controlling, or having an interest, claim, or title, in or to an establishment, company, or corporation holding or applying for a beer wholesaler's permit.

Little argues that the plain language of Title 7.1 prohibits the enforcement of exclusive distribution agreements. Specifically, Little asserts that beer wholesalers can sell beer throughout the State and exclusive distribution agreements give the brewer more control over the wholesaler's business than is permitted under Title 7.1, particularly Indiana Code section 7.1-5-9-2. Accordingly, it maintains that Rule 28 is superfluous, and its expiration has not changed the legal landscape of beer distribution in Indiana. The ATC and A–B respond that Title 7.1 does not prohibit exclusive distribution agreements between a brewer and a wholesaler and that the expiration of Rule 28 clears the way for such agreements.

■ In support of their arguments, A–B and ATC rely primarily on our supreme court's opinion in *Barco.* In *Barco,* the issue presented on appeal was whether the ATC had authority to promulgate Rule 28. *Barco,* 595 N.E.2d at 251. Our supreme court determined that the ATC did have such authority. *Id.* at 251-52. Noting that our court had also concluded that the ATC had authority to promulgate Rule 28, the supreme court determined that

> [t]he court [of appeals] correctly concluded that (1) the legislature had neither expressly forbidden nor permitted the use of territorial limitations by alcoholic beverage wholesalers, and (2) although wholesalers had the right to sell alcoholic beverages anywhere in the state, the statutes did not guarantee that right or prohibit its alienation.

*Id.* at 252 (citing *Barco Beverage v. Ind. Alcoholic Beverage,* 563 N.E.2d 658, 662 (Ind.Ct.App.1990), *trans. granted*).

The court then addressed Barco's argument that Rule 28 represented an unconstitutional violation of the separation of

powers guaranteed by our Indiana Constitution, and concluded that

> the legislature established the purpose of the Act and provided that the Commission shall have the power to promulgate rules and regulations governing the conduct of the business of wholesalers and to "exercise all powers necessary and proper to carry out the policies of this title." We hold that these express policies and delegation of powers set forth by the Indiana General Assembly provide sufficient standards or guidelines to enable the Commission to constitutionally enact a rule prohibiting exclusive territorial limits on the right of wholesalers to sell alcoholic beverages throughout the State of Indiana.

*Id.* at 254 (quoting Ind.Code § 7.1–2–3–31 (1982)).

Barco also argued that the ATC exceeded its statutory authority in promulgating Rule 28. The court determined that the ATC did not exceed the statutory authority conferred upon it by the General Assembly because it gave the ATC "specific power to promulgate rules governing the conduct of the business of permittees governed by the Act." *Id.* Our supreme court also made the following observations:

> Had the legislature believed that Rule 28 was not in conformance with its policy or was outside of the powers delegated to the Commission, it has had several opportunities either to repeal Rule 28 or to amend the statute so as to deny the Commission the power to promulgate

such a rule. Ultimately, the legislature has rejected these options, giving credence to the Commission's argument that Rule 28 is valid because of legislative acquiescence. However, we need not rely on legislative acquiescence to determine that the legislature, in Title 7.1, established the general purposes of the act and conferred upon the Commission the authority not only to regulate the business of permittees, but also to exercise all powers necessary and proper to carry out those purposes. The Rule passes both constitutional and statutory muster.

*Id.* at 255.

In *Barco,* our supreme court clearly held that the ATC had both constitutional and statutory authority to promulgate Rule 28. Therefore, it also stands to reason that the ATC had the authority to allow Rule 28 to "sunset," or expire, by failing to readopt it.

In addition, as our supreme court noted in *Barco,* the General Assembly has not expressly forbidden exclusive territories. Indiana Code section 7.1–5–9–2 merely provides that a holder of a brewer's permit may not "control" an establishment, company, or corporation holding or applying for a beer wholesaler's permit. While Little argues that the term "control" must be interpreted to mean that exclusive territories are not permitted,[3] the ATC notes that some states have similar regulatory bans on brewer control of wholesalers, and yet those same states either permit exclusive territories or mandate them. Br. of

---

**3.** In support of this argument, Little relies on *Jos. Schlitz Brewing Co. v. Central Beverage Co., Inc.,* 172 Ind.App. 81, 359 N.E.2d 566 (Ind.Ct.App.1977), which was decided prior to the promulgation of Rule 28. In that case, a brewer attempted to require a wholesaler to adopt thirty internal controls on its business operations and our court determined it was an unlawful attempt by the brewer to dominate and control the conduct and business of

the wholesaler. *Id.* at 98–99, 359 N.E.2d at 578. The facts and issues of that case are clearly distinct from the issue in the case before us, as A–B is not attempting to control the manner in which Little conducts its business operations, but is merely attempting to establish exclusive territories for its wholesalers by contractual agreement, if such exclusivity becomes legal in Indiana, which it has.

Appellee ATC at 13 (citing Connecticut and Texas as examples of states that statutorily prohibit brewer control, but allow exclusive territories).[4]  Additionally, as was suggested in *Barco,* the General Assembly's enactment of the Sunset Law allowed Rule 28 to expire.  The General Assembly could have exempted Rule 28 from expiration, but chose not to do so.

Finally, we note that Little entered into a contract with A B in 1997, after the General Assembly enacted the Sunset Law, which included provisions automatically implementing exclusive territories if they were permitted in Indiana.  Therefore, when Little entered into the agreement with A–B, it was aware that Rule 28 would expire unless it was readopted by the ATC.

Our courts have never held that Indiana Code section 7.1–5–9–2 does not permit exclusive territories.  This fact was reinforced by our supreme court's statement in *Barco* that "the legislature had neither expressly forbidden nor permitted the use of territorial limitations by alcoholic beverage wholesalers." *Barco,* 595 N.E.2d at 252.  After the United States Supreme Court determined that exclusive territories did not violate the Sherman Antitrust Act, they were forbidden in Indiana only by the ATC's promulgation of Rule 28 in 1979.  The General Assembly allowed Rule 28 to expire by enacting the Sunset Law.  Thereafter, the ATC clearly had the authority to readopt Rule 28 or to let it expire by operation of law.  The ATC chose the latter course of action; therefore, exclusive territories are no longer forbidden in Indiana, and the trial court did not err when it granted the ATC's and A B's motions for summary judgment.

## II.  The "Sunset" of Rule 28 and the APA

■ Little next argues that the ATC violated the Administrative Procedures Act ("APA") when it allowed Rule 28 to "sunset" without adhering to the notice requirements of the APA.  The APA provides that when an agency decides to repeal a rule, there are several notice requirements that must be met, including newspaper publication and publication in the *Indiana Register.*  Ind.Code §§ 4–22–2–13, –23, –24 (2002).  The notice must set forth specific information as required by statute.  Ind.Code § 4–22–2–24(d).  Also, after the required public notice is given, the agency must convene a public hearing to allow for comment on repeal of the rule.  Ind.Code § 4–22–2–26 (2002).  Therefore, Little argues that the "Sunset Law," which contains no provisions regarding notice, is a general statute, and the procedures in the APA, a more specific statute, must be followed.  Br. of Appellant at 39 (citing *Ind. Alcoholic Beverage Comm'n v. Osco Drug, Inc.,* 431 N.E.2d 823, 833 (Ind.Ct. App.1982) for the principal that where one statute deals with a subject matter in general terms and another statute deals with the same subject matter in a more detailed manner, the more specific statute will prevail).

The ATC and A–B both contend that the ATC did not repeal Rule 28, but rather, that Rule 28 expired by operation of the "Sunset Law," and the APA does not apply.  Specifically, the ATC argues that under the "Sunset Law" the expiration of Rule 28 is "automatic as a matter of law, with no requirement that agencies follow [APA] procedures that apply to other, non-

---

4.  Connecticut's prohibition of brewer "control" raises no issue regarding that state's allowance of exclusive territories.  Conn. Agencies Regs. § 30–6–A4(b) (2001).  Texas statutorily prohibits such "control" and mandates exclusive territories.  Tex. Alco. Bev. Code § 102.01(h); § 102.51 (2001).

sunset, agency-initiated rule repeals." Br. of Appellee ATC at 20.

The "Sunset Law" provides, in pertinent part:

> (b) An administrative rule that:
>
> (1) was adopted under IC 4–22–2;
>
> (2) is in force on December 31, 1995; and
>
> (3) is not amended by a rule that takes effect after December 31, 1995, and before January 1, 2002;
>
> expires not later than January 1, 2002.

Ind.Code § 4–22–2.5–2(b) (Supp.2002).

We agree with the ATC's and A–B's arguments that Rule 28 was not repealed by the ATC, and therefore, the ATC was not required to follow the procedures set forth in the APA. Rule 28 automatically expired by operation of the Sunset Law as prescribed by the General Assembly and not by any agency action. Also, Little's argument that the APA is a more specific statute and its provisions must prevail is not persuasive because the two statutes do not deal with the same subject matter. The Sunset Law concerns the legislatively mandated expiration of administrative rules, while the APA concerns the procedures necessary for an agency to repeal an administrative rule.

### III. Little's Wholesaler Permit

Thirdly, Little argues that the ATC's decision not to readopt Rule 28 operates as a partial revocation of its beer wholesaler's permit. Little's wholesaler's permit allows it to sell beer wholesale in Indiana. Indiana Code section 7.1–3–3–5 provides in pertinent part:

> (a) The holder of a beer wholesaler's permit may purchase and import from the primary source of supply, possess, and sell at wholesale, beer and flavored malt beverages manufactured within or without this state.

> (b) A beer wholesaler permittee may possess, transport, sell, and deliver beer to:
>
> (1) another beer wholesaler authorized by the brewer to sell the brand purchased;
>
> (2) a consumer; or
>
> (3) a holder of a beer retailer's permit, beer dealer's permit, temporary beer permit, dining car permit, boat permit, airplane permit, supplemental caterer's permit, or supplemental retailer's permit;
>
> located within this state.

Ind.Code § 7.1–3–3–5 (1982 & Supp.2002). Prior to the expiration of Rule 28, Little exercised this privilege in areas throughout the state.

Little attempts to argue that the ATC effectively revoked its permit without following the procedures for such revocation in Indiana Code section 7.1–3–23–6 and that effecting this revocation of its permit without notice and an opportunity to be heard violates its due process rights. However, Little fails to recognize that the expiration of Rule 28 itself had no impact on Little's permit to sell beer wholesale throughout Indiana. It was not an ATC action, but Little's own contract with A–B that limited its use of its permit to its designated territory. Therefore, Little's argument that the ATC's failure to readopt Rule 28 resulted in a partial revocation of its permit is without merit.

### IV. Declaratory Relief

Finally, Little argues that the trial court erred when it granted declaratory relief on A–B's counterclaim for breach of contract. The trial court entered a general judgment in favor of A–B on its counterclaims, which included that A–B would have the right to terminate its contract with Little if Little violated the exclusive territory provisions in its contract with A–B. Little contends

that "[t]here is no argument or evidence that Little ... [has] violated or will violate" the exclusive territory provisions; therefore, the declaratory relief granted to A–B was "not ripe for the trial court's decision." Br. of Appellant at 43–44.

■ The authority of the trial court to grant declaratory relief is set forth in the Uniform Declaratory Judgment Act, which is found in Indiana Code chapter 34–14–1. The purpose of the Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." Ind.Code § 34–14–1–12 (1999). In other words, "the purpose of a declaratory judgment action is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement." *Ferrell v. Dunescape Beach Club Condos. Phase I, Inc.*, 751 N.E.2d 702, 707 (Ind.Ct. App.2001) (citation omitted). The following sections of the Act relevant to this appeal are as follows:

> Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. The declaration has the force and effect of a final judgment or decree.

Ind.Code § 34–14–1–1 (1999).

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or

validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ind.Code § 34–14–1–2 (1999).

■ The basis of jurisdiction under the Declaratory Judgment Act is a justiciable controversy or question, which is clearly defined and affects the legal right, the legal status, or the legal relationship of parties having adverse interests. *Hibler v. Conseco, Inc.*, 744 N.E.2d 1012, 1023 (Ind. Ct.App.2001). A primary requirement of the Act is that the plaintiff demonstrate that he has standing for the relief requested. *Town of Munster v. Hluska*, 646 N.E.2d 1009, 1012 (Ind.Ct.App.1995).

> In order to obtain declaratory relief, the person bringing the action must have a substantial present interest in the relief sought, not merely a theoretical question or controversy but a real or actual controversy, or at least the "ripening seeds of such a controversy," and that a question has arisen affecting such right which ought to be decided in order to safeguard such right.

*Id.* (citing *Morris v. City of Evansville*, 180 Ind.App. 620, 622–23, 390 N.E.2d 184, 186 (1979)). "The determinative factor is whether the declaratory judgment will result in a just and more expeditious and economical determination of the entire controversy." *Ferrell*, 751 N.E.2d at 708.

In support of its argument that it had standing to request declaratory relief, A–B relies on Indiana Code section 34–14–1–3, which provides that a declaratory judgment is appropriate to construe a contract even in the absence of a breach. Ind.Code § 34–14–1–3 (1999); *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 294 (Ind.Ct.App.1997), *trans. denied.* A–B argues that it "need not await violations of the Territory Provisions by Little ... and

then 'subject itself to a suit for breach of contract' alleging that such violation does not give rise to a right to terminate." Br. of Appellee A–B at 39 (quoting *Myers v. State Life Ins. Co.*, 123 Ind.App. 246, 249, 110 N.E.2d 312, 313 (1953)). We agree. In the interests of efficiency and judicial economy, it was appropriate for the trial court to resolve this final issue between the parties, even though Little had not breached the contract.

### Conclusion

Rule 28 expired by operation of the Sunset Law, and therefore, exclusive beer distributorship territories are no longer forbidden in Indiana. Also, the ATC was not required to follow the APA procedures regarding repeal of agency rules because Rule 28 expired under the Sunset Law, and its decision not to readopt Rule 28 did not amount to a partial revocation of Little's permit. Finally, the trial court did not err when it entered a declaratory judgment in favor of A–B and determined that if Little violated the exclusive territory provisions of the contract, A–B would have the right to terminate the contract.

Affirmed.

NAJAM, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, J., dissenting.

I respectfully dissent.

I believe that the resolution of this case turns on the meaning of "control" as used in the statutes regulating the sale and distribution of alcoholic beverages in Indiana. IC 7.1–5–9–2 prohibits a brewer from holding, acquiring, possessing, owning, *controlling*, or having an interest, claim, or title, in or to an establishment, company, or corporation holding or applying for a beer wholesaler's permit. (Emphasis added.) When interpreting words of a single section of a statute, the court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Campbell v. State*, 714 N.E.2d 678, 682 (Ind.Ct.App. 1999). Here, because IC 7.1–3–3–18 addresses financial control, I conclude that the prohibition on "control" in this statute encompasses a different concept.

This court has previously explored the meaning of "control" in IC 7.1–5–9–2 in *Jos. Schlitz Brewing Co. v. Central Beverage Co.*, 172 Ind.App. 81, 359 N.E.2d 566 (1977), *trans. denied*. In that case, a wholesaler brought suit against a brewer for wrongful termination of a distribution agreement. *Id.* This court held that the efforts of Schlitz, a brewer, to require Central, a wholesaler, to adopt thirty internal controls on its business operations was an unlawful attempt by Schlitz to dominate and control the conduct and business of Central. *Id.* at 98–99, 359 N.E.2d at 578. This court determined that when IC 7.1–5–9–2 is read in conjunction with IC 7.1–3–3–18 "our legislature intended to prohibit brewer interference with management operations other than merely prohibiting brewers from having some financial interest in their wholesaler's businesses." *Id.* at 99, 359 N.E.2d at 578. In so holding, we looked to the definition of the word "control," which we noted "has been defined as the exercise of restraining or directing influence over; or to regulate, restrain, dominate, hold from action, overpower, counteract or govern." *Id.* at 100, 359 N.E.2d at 578 (citing Black's Law Dictionary 399 (4th ed.1951)). We agreed with the trial court's finding that Schlitz terminated its agreement with Central in an unlawful attempt to consolidate Schlitz wholesalers in Indiana. *Id.* at 104, 359 N.E.2d at 580. We explained that brewers can lawfully consolidate their wholesal-

ers, but that multi-county control over a beer wholesaler's business had been proscribed by the legislature. *Id.* at 98, 359 N.E.2d at 578.

Thus, "control" embodies the concepts of governance, counteraction, overpowerment, and influence, and our legislature could have had any or all of these in mind in enacting the statute. Critically, however, *Schlitz* stands for the proposition that IC 7.1–5–9–2 is addressed to the brewer's effect on the way in which the beer wholesaler conducts its business. Notably, *Schlitz* was decided on the basis of the statute alone, as Rule 28 had not yet been promulgated.

Later, after the promulgation of Rule 28, in *Barco Beverage v. Ind. Alcoholic Beverage Comm'n*, 563 N.E.2d 658 (Ind.Ct. App.1990), *clarified on reh'g*, 571 N.E.2d 306, *trans. granted*, 595 N.E.2d 250 (Ind. 1992), and in our opinion on rehearing, this court again addressed the term "control" in the statute. A panel of this court determined that distillers and rectifiers were improperly included in Rule 28 because IC 7.1–5–9–2, pertaining to brewers and vintners, includes the word "control," but IC 7.1–5–9–8, the analogous provision relating to distillers and rectifiers, does not. We explained that Rule 28 was a valid expression of legislative intent because the statute was aimed at prohibiting control of any type: "it is the pernicious influence that is prohibited, not the avenue by which that influence is exerted." *Id.* at 309.

Although our opinion in *Barco* was vacated when our supreme court granted transfer, its logic was not undermined when the court came to the same result on different grounds. In fact, the supreme court endorsed this court's conclusion in its opinion on transfer. In *Barco Beverage v. Ind. Alcoholic Beverage Comm'n*, 595 N.E.2d 250 (Ind.1992), the supreme court, without examining the word "control,"

found that Title 7.1 provided the ATC with authority to promulgate Rule 28. *Id.* at 255. The court noted that Rule 28 "fosters competitiveness between wholesalers in that they must vie against each other statewide in the sale of their products." *Id.* at 254.

Like the internal controls in *Schlitz*, exclusive distribution territories allow a brewer to interfere with the management operations of a wholesaler. Instead of mandating merely how a wholesaler serves its customer, exclusive distribution agreements go one step further and effectively dictate which customers a wholesaler can and cannot serve.

In this case, the shift of substantial power over the business operations of wholesalers to A–B, the brewer, was apparent almost immediately. Recognizing "significant shifts" in wholesaler sales, A–B instructed its wholesalers to "carefully review weekly their respective forecasting worksheet an submit sales forecast revisions ... as necessary...." *Appellant's Appendix* at 263. It also mandated an extensive new product quality procedure which required wholesalers to complete various forms and undertake specified procedures for "close to code" and "out of code" products and unilaterally adjusted wholesalers' inventory levels in December in anticipation of Rule 28's sunset. *Appellant's Appendix* at 264–65.

In light of our holding in *Schlitz* and our analysis in *Barco*, I believe that exclusive distribution territories impermissibly allow brewers to "control" the operations of beer wholesalers in contravention of Title 7.1 without regard to the status of Rule 28. *Accord United Beverage Co. v. Indiana Alcoholic Beverage Comm'n*, 566 F.Supp. 650 (N.D.Ind.1983), *aff'd as modified*, 760 F.2d 155 (7th Cir.1985) ("[c]learly if this section protects a wholesaler's managerial decision regarding internal controls, it also

protects the wholesaler's business judgment as to who his customers will be.") *Id.*

The majority holds that IC 7.1–5–9–2 does not prohibit exclusive distribution territories and point to the *Barco* decision for support. In *Barco,* the supreme court summarized this court's decision in part as follows: "the legislature had neither expressly forbidden nor permitted the use of territorial limitations by alcoholic beverage wholesalers...." *Id.* at 252. In doing so, the court was merely observing that the legislature has not enacted legislation limiting the scope of beer wholesalers' permits in any way and that IC 7.1–5–9–2 does not refer specifically to territorial restrictions, but rather speaks to a broad range of prohibited controlling arrangements.

The majority also quotes the following in support of its conclusion:

"Had the legislature believed that Rule 28 was not in conformance with its policy or was outside of the powers delegated to the Commission, it has had several opportunities either to repeal Rule 28 or to amend the statute so as to deny the Commission the power to promulgate such a rule."

*Id.* at 255. This quote is better understood when read in context with the sentences that immediately follow it:

"Ultimately, the legislature has rejected these options, giving credence to the Commission's argument that Rule 28 is valid because of legislative acquiescence. However, we need not rely on legislative acquiescence to determine that the legislature, in Title 7.1, established the general purposes of the act and conferred upon the Commission the authority not only to regulate the business of permittees, but also to exercise all powers necessary and proper to carry out those purposes."

*Id.* Here, the court was merely explaining that the legislature would have repealed Rule 28 had it not conformed to the policy of Title 7.1, yet it chose not to. Moreover, Rule 28 was in conformance with Title 7.1 and was within the powers delegated to the ATC. *Id.*

A regulation must be consistent with its statutory mandate in order to be valid. *See State v. Driver,* 511 N.E.2d 11, 11 (Ind.Ct.App.1987). Rule 28 was upheld by our supreme court in *Barco* as consistent with Title 7.1. Accordingly, by definition, the opposite of Rule 28, that is, the creation of exclusive distribution territories, cannot also be consistent with the text and the legislative intent of the anti-control provision of Title 7.1. *See also Miller Brewing Co. v. Bartholemew County Beverage Co.,* 674 N.E.2d 193 (Ind.Ct.App. 1996), *trans. denied* (1997) ("Rule 28 clearly embodies the policy which the General Assembly has consistently affirmed, that territorial restrictions have no place in Indiana."). Rule 28 was promulgated in response to shifting federal law to clarify existing state law and to preserve the status quo. However, Rule 28 did not and in fact could not have changed the law. *See Indiana Department of State Revenue v. Best Ever Cos.,* 495 N.E.2d 785, 787 (Ind. Ct.App.1986) (agency cannot add to law by its rules and regulations). Accordingly, the expiration of Rule 28 may not alter the statutory mandate against control, in this case manifested by exclusive distribution territories.

As to all other issues, I concur.